39   92
198  71

39      92
212   ¹170
212    172
212   ¹173
212   ¹174
212    175

39      92
30 SC ¹273

39      92
f 33 SC ²294

39      92
38SC  ²259

# The Girard Bank *versus* The Bank of Penn Township.

*Contract between Banks and Depositors.—Holder of Certified Check a Depositor.—Demand and Refusal necessary to create Right of Action. —Statute of Limitations as against Corporations runs from Demand.*

1. The holder of a check marked "good," is in no better position than an original depositor. The demand for the certificate is not a demand for payment. By such certificate the deposit which is represented by the check ceases to stand to the credit of the depositor, and passes to the credit of the check-holder, who is thereafter a depositor to that amount, with the same but no greater rights than those of any other.

2. The engagement of a bank with its depositors is not to pay absolutely and immediately, but when payment shall be required at the banking-house, and therefore it is not in default or to respond in damages until demand and refusal; nor does the Statute of Limitations begin to run until demand has been duly made.

3. Neither a bank or other corporation can defend against claims for deposits or undrawn dividends on the ground that no demand has been made for them within six years.

4. A check drawn October 7th 1852, and certified, was not presented for payment until September 3d 1859; meanwhile, on the 10th of October 1854, the bank paid the money to the original depositor, taking his bond of indemnity against the check. *Held*, in an action upon the check, that the holder was not barred by his delay in making demand for payment, and that the taking of the indemnity was a distinct acknowledgment, that the money then remained in bank to the credit of the holder of the certified check.

Error to the District Court of *Philadelphia*.

This was an action of *assumpsit*, brought September 3d 1859, by the Girard Bank in the city of Philadelphia, against the Bank of Penn Township, to recover the amount of a check for $1150 with interest, which had been drawn on the Bank of Penn Township, marked "good" by the proper officer of the bank, and endorsed to the Girard Bank by the holder. The case was this:—

Adam Dietrich drew his check, dated September 30th 1852, payable October 7th 1852, on the Bank of Penn Township, on his deposit with them, to the order of C. S. Grube, for $1150, which check was duly endorsed to the Girard Bank, and marked "good" by the Bank of Penn Township.

The Girard Bank having mislaid this check among the returned checks of a depositor, lost it until some time in 1859, when its presentation for payment to the Bank of Penn Township led to its discovery by the Girard Bank; who, on application to the Bank of Penn Township, for the first time learned that the Bank of Penn Township had, without notice to them, paid it to Adam Dietrich, October 12th 1854, on his duplicate check and taken the following bond, viz. :—

[Girard Bank *v.* Bank of Penn Township.]

Know all men by these presents, that we, Adam Dietrich, Thomas Grosh (farmer), John Eshleman (miller), and John Hoffman (drover), all of Lancaster county, Pennsylvania, are held and firmly bound unto the Bank of Penn Township, in the county of Philadelphia, in the sum of two thousand three hundred dollars, lawful money of the United States of America, to be paid to the said The Bank of Penn Township, their certain attorney, successors, or assigns. To which payment well and truly to be made, we do bind ourselves jointly and severally, our and each of our heirs, executors, and administrators, firmly by these presents. Sealed with our seals, and dated 9th day of October, in the year of our Lord one thousand eight hundred and fifty-four (1854).

The condition of this obligation is such, that whereas the above bounden Adam Dietrich, on or about the 8th day of November, A. D. 1852, drew his draft or check on the Bank of Penn Township aforesaid, for eleven hundred and fifty dollars, which was marked "good" by the said bank, which said draft or check has since been lost or mislaid, and the said Adam has applied to the said bank to pay a duplicate draft or check of the same amount and date to him, which the said bank have agreed to pay, upon being fully indemnified therefor. Now, if the said Adam Dietrich shall deliver up to the said bank the said draft or check when it shall be found, and until the said lost draft or check shall be so delivered up, shall and do save, defend, keep harmless, and indemnify the said bank and its successors, and their goods and chattels, lands and tenements, of and from the said lost draft or check, and of and from all actions, suits, payments, costs, charges, and damages for or by reason thereof, then this obligation to be void, otherwise to remain in full force.

On the 3d of September 1859, a copy of the check was filed by plaintiffs, which was met by an affidavit of defence. On the 6th of October, the plaintiffs entered a rule for judgment for want of a sufficient affidavit, which, on hearing, was discharged. On the 3d of December 1859, the plaintiffs' declaration was filed, containing twelve counts, viz.: the first and second by endorsee on an accepted draft or check; the third and fifth by endorsee on an accepted bill of exchange; fourth and sixth specially on a deposit, setting forth at length the making of the check, the endorsing to plaintiffs, and the marking "good" by defendant, whereby it was averred the defendants became the depositees of the plaintiffs. The seventh was a count generally on a deposit, to which were added the common counts for money lent, paid, had and received, interest, and on an account stated.

The defendants pleaded *non assumpsit, non assumpsit infra sex annos,* and to the fourth and sixth counts, *actio non accrevit*

*infra sex annos:* and on the issues thus made up the parties went to trial.

The learned judge below directed a verdict in favour of plaintiffs for principal and interest, subject to the opinion of the court in banc, whether, upon the evidence and the pleas of the Statute of Limitations, the plaintiffs were entitled to recover.

The court in banc afterwards ordered judgment to be entered for defendants, *non obstante veredicto*, whereupon the plaintiffs sued out this writ, and assigned for error the following matters, to wit :—

The court below erred :—

1. In giving judgment for the defendants on the question reserved, whether the plaintiffs' claim was barred by the Statute of Limitations, and of their right to recover on the whole case in point of law.

2. In not giving judgment for the plaintiffs thereon.

3. In deciding that the holder of a check on a deposit in bank, marked " good" by the bank, loses his right thereon against the bank, by not making a demand thereon within six years from the time of such certification.

4. In not deciding that the Statute of Limitations does not run in favour of the bank, against the holder of such a certified check.

5. In not deciding that the payment of the certified check on the duplicate check and bond under the circumstances, and the representations in the bond, being made within six years of demand and suit, were an acknowledgment by the bank of a right in the holder of the certified check that would avoid the Statute of Limitations.

6. In not deciding that the payment of the certified check on the duplicate check and bond, under the circumstances, and the representations in the bond, being made within six years of the time of the demand and suit, were an acknowledgment by the bank of a right in the holder of the certified check that would make such demand and suit sufficient and within time to sustain such right.

*George L. Crawford* and *B. H. Brewster,* for plaintiffs in error. —The defence in this case—lapse of time in making demand and bringing suit on the plaintiffs' claim—is strictly technical. It has not the meritorious foundation of the Statute of Limitations and analogous defences arising from lapse of time, viz., a presumed loss of evidence of a meritorious defence—for none is pretended here. And the enforcement of the plaintiffs' claim vitalizes for the defendants a security for their repayment by the party to whom they improperly paid the claim on that

security, which security is worthless to rectify the wrong, except upon an enforcement of the plaintiffs' claim.

Has the lapse of time in making demand and bringing suit barred the plaintiffs' claim?

I. A *subsisting continuing* trust is not barred by lapse of time: Story on Equity, vol. 2, § 1520, a; Kane *v.* Bloodgood, 7 John. Ch. 90; Cholmondeley *v.* Clinton, 2 Merivale 93; Johnston *v.* Humphreys, 14 S. & R. 394; App *v.* Driesbach, 2 Rawle 287; Lyon *v.* Marclay, 1 Watts 271; Finney *v.* Cochran, 1 W. & S. 112; Zacharias *v.* Zacharias, 11 Harris 452; and Heckert's Appeal, 12 Harris 482.

It is the character of the trust as *a continuing and subsisting one*, and not the forum, or form of the proceeding, viz.: in a court of law or equity, that tests the rule: Thompson *v.* McGaw, 2 Watts 163; Heckert's Appeal, 12 Harris 486.

Dividends of stock corporations, until demand and refusal, are such trusts: Kane *v.* Bloodgood, 7 John. Ch. 90; Philadelphia and Wilmington Railroad Co. *v.* Cowell, 4 Casey 329, 339. A deposit of money for a special purpose was recognised as such a trust in Johnston *v.* Humphreys, 14 S. & R. 394; affirmed in Zacharias *v.* Zacharias, 11 Harris 452; and a bank deposit, until demand and refusal, is such a trust: Fogarties *v.* The State Bank, Am. L. Reg., May 1860, p. 393. If a check be accepted, by marking good or otherwise, by the bank, it is indisputably an assignment of the fund: Gibson *v.* Cooke, 20 Pick. 15; Brown's Case, 2 Story 502.

In New York, where certification is in more common use, and its legal and commercial character more accurately defined, the relation between a bank and holder of a certified check was decided in Willets *v.* The Phœnix Bank, 2 Duer 121, which was a suit by the holder of a certified check against a bank, who had subsequently repaid the deposit to the original depositor, and defended on the ground of laches of the holder in demanding payment. The court denied the validity of such defence. This was affirmed in a similar case, Farmers' and Mechanics' Bank *v.* Butchers' and Drovers' Bank, 4 Duer 219.

The Act of March 6th 1847, §§ 1, 2, 3, 4, 5, Brightly's Purd., pp. 87, 88, requiring banks, &c., to publish any dividends, profits, deposits, or balances in their hands, unclaimed for three years, which, if unclaimed for three years longer, are to escheat to the Commonwealth, subject to the owner's right of reclamation from the state treasurer at any time afterwards, is confirmatory of the plaintiffs' right against the Statute of Limitations; and banks can be relieved from responsibility only by complying with its provisions.

The payment by the defendants of the check to the drawer on the duplicate check and bond under the circumstances and

representations in the bond, within six years of demand and suit, were an acknowledgment that the relation between the defendants and holder of the certified check then existed. Such acknowledgments are distinguishable from acknowledgments of indebtedness to avoid the Statute of Limitations: Johnston *v.* Humphreys, 14 S. & R. 394; and Zacharias *v.* Zacharias, 11 Harris 452; and need not be made to the plaintiff or his agent, being *admissions* as *evidence* of a then subsisting fact, and not foundations for an implied promise: Clark *v.* Hougham, 2 B. & C. 154; Mountstephen *v.* Brooke, 3 B. & A. 141; Halliday *v.* Ward, 3 Camp. 32; Peters *v.* Brown, 4 Esp. 46.

II. But, independently of the doctrine of trusts, and speaking the language of a law forum which ignores them, and, pending them, recognises no right of action whereon its defence of the statute could attach, the Statute of Limitations does not begin to run on engagements for the payment of money on actual demand until demand: Picquet *v.* Curtis, 1 Sumner 478; Wright *v.* Hamilton, 2 Bailey 51; Winman *v.* The Mohawk Ins. Co., 13 Wend. 267; Philadelphia and Wilmington Railroad Co. *v.* Cowell, 4 Casey 329, 339. And bank deposits are of that character: Union Bank *v.* Planters' Bank, 9 Gill & Johnson 439, 461; Johnson *v.* Farmers' Bank, 1 Harring. 117, 119. And bank notes, by Act of March 22d 1817, § 1, Brightly's Purd., p. 76, § 45. Independently of that act, the Statute of Limitations does not run against a bank note: Story on Prom. Notes, § 501.

A certified check is a bank note intended to circulate as money, and laches in making demand is no more imputable in the one case than in the other: Willets *v.* Phœnix Bank, 2 Duer 132, affirmed 4 Duer 219. Certified checks are by bankers in England used and deposited as bank bills: 4 Duer 219. In New York, certified checks form a considerable part of bank circulation, and are in more general use as a commercial equivalent with bank bills in bank currency.

A certified check, as a bank note or deposit, is not due or payable, nor does the statute begin to run on it, until demand. No interest is payable on it until demand; interest is payable as soon as the debt is due, and the statute does not begin to run until the debt is due.

The court below, treating the plaintiffs' claim as not barred by the Statute of Limitations, have considered the delay in making the demand as an answer to the foregoing, on the principle of Codman *v.* Rogers, 10 Pick. 112, and Morrison's Administrator *v.* Mullin, 10 Casey 12.

"The Statutes of Limitations, when they are addressed to courts of equity as well as to courts of law, seem equally obligatory in each court:" Story's Equity, vol. 2, § 1520. But

[Girard Bank v. Bank of Penn Township.]

these cases require the demand to be made in a reasonable time, where a demand is necessary to perfect a claim; ordinarily, the time limited by statute for bringing the action: Lafarge v. Jayne, 9 Barr 410; Railroad Co. v. Byers, 8 Casey 22; Morrison's Administrator v. Mullin, 10 Id. 12.

This doctrine, therefore, does not apply,

1. To cases of subsisting trusts (such as bank dividends or deposits by original deposit or certified check), which trusts continue until a demand and refusal; which is not simply a step in final perfection of a legal right, but destroys the character of the transaction by creating an adverse holding; or

2. To bank notes, or their commercial equivalent in bank currency, as certified checks, whose nature and use for circulation furnishes a reason for delaying the operation of the doctrine within its very terms; and besides,

3. The ordinary limitations at common law are not absolute, but rebuttable presumptions.

*J. P. O'Neill* and *Thorn,* for defendants in error.—The principal, and perhaps the only question in the case, is whether, under the circumstances, the Statute of Limitations was a bar to the action. We aver that it was.

Two grounds are urged by the plaintiffs in error, in support of their case.

1st. That the deposit by Adam Dietrich created a trust between him and the bank, and that the marking of the check "good" continued such trust to whomsoever should be the holder of it.

To this point it is submitted, that whatever may be the relation of one who deposits his money and the bank with which he deposits it, such relation is not continued, and does not exist between the bank and those persons who receive checks on it from the depositor. In order to prevent the running of the statute upon the ground of a trust existing between the parties litigant, it must appear, 1st. That it be a direct trust. 2d. That it be cognisable only in a court of equity. 3d. That it arise between the trustee and *cestui que trust:* Kane v. Bloodgood, 7 John. Ch. 90; App v. Driesbach, 2 Rawle 302; 20 Johns. 585; Lyon v. Marclay, 1 Watts 275; Finney v. Cochran, 1 W. & S. 118.

2d. That the bank, by taking security from Adam Dietrich in 1854, acknowledged its liability upon the check to the plaintiffs, and thereby prevented the running of the statute.

To this point of the plaintiffs in error, it is submitted, that there was no acknowledgment sufficient to prevent the running of the statute: Burr v. Burr, 2 Casey 285. The defendants made no promise to pay the amount of the check to the plaintiffs nor to any one as their agent. If A. gives a note to B. which is

3 Wᴿ.—7

[Girard Bank *v*. Bank of Penn Township.]

lost or mislaid, he may recover the amount of it in an action, on giving an indemnity, but it has never been supposed that the taking of such indemnity would operate to prevent the running of the statute against any one who would be the holder of it.

If the check was lost, the plaintiffs could have sustained an action against the defendants on giving an indemnity at any time within six years, and there would seem to be no good reason, why a party having a right of action should be permitted to lie by for seven years, and then to recover upon an instrument, which notwithstanding its loss could have been recovered on before the statute had barred his remedy.

The Statute of Limitations in this case, both on principle and authority, was a bar to the claim. The plaintiffs seek a recovery on a check marked "good" by the defendants. A check is an inland bill of exchange, and the marking it "good" by the defendants an acceptance. Upon this acceptance a right of action accrued immediately to the plaintiffs, or a demand was necessary to perfect it. In either case the Statute of Limitations is a bar In the first, because no suit has been commenced within six years; in the second, because the demand necessary to perfect the plaintiffs' cause of action, has not been made within six years. If an act on the part of a creditor, such as demand or notice, be necessary to complete his cause of action, such act must be done within six years from the date of the contract, and from that period the Statute of Limitations begins to run against the claim : Morrison's Administrator *v*. Mullin, 10 Casey 12; Pittsburgh and Connellsville R. R. Co. *v*. Graham, 12 Id. 77.

The opinion of the court was delivered, May 6th 1861, by

STRONG, J.—Were this a suit against the Bank of Penn Township by the original depositor, the Statute of Limitations would be interposed in vain, not so much because a bank is a technical trustee for its depositors, as for the reason that the liability assumed by receiving a deposit is to pay when actual demand shall be made. The engagement of a bank with its depositor is not to pay absolutely and immediately, but when payment shall be required at the banking-house. It becomes a mere custodian, and is not in default or liable to respond in damages until demand has been made and payment refused. Such are the terms of the contract implied in the transaction of receiving money on deposit, terms necessary alike to the depositor and the banker. And it is only because such is the contract, that the bank is not under the obligation of a common debtor to go after its customer and return the deposit wherever he may be found. Hence it follows, that no right of action exists, and the Statute of Limitations does not begin to run until the demand stipulated for in the contract has been duly made. For this, authorities are hardly necessary.

[Girard Bank *v.* Bank of Penn Township.]

Two were cited in the court below, and they suffice : The Union Bank *v.* The Planters' Bank, 9 Gill & Johnson 439–461, and Johnson *v.* The Farmers' Bank, 1 Harrington 117–119.

Nor is it easy to see why the holder of a check marked "good," stands in any different position from that of the original depositor. Presenting a check and having it thus certified, is clearly not a demand for the money deposited. Its purpose is not to demand payment, but to obtain evidence that the sum mentioned in the check remains on deposit to answer the check when presented. It contemplates that the bank is still to retain the custody of the money. How retain it? As a depository, or as value paid for the acceptance of a bill of exchange? Certainly not as the latter, for then no demand at the banking-house would be necessary before suit, and the presentment of a bill payable on demand, merely for acceptance, is an absurdity. When a check payable to bearer, or order, is presented with a view to its being marked "good," and is so certified, the sum mentioned in it must necessarily cease to stand to the credit of the depositor. It thenceforth passes to the credit of the holder of the check, and is specifically appropriated to pay it when presented, and as the purpose of having it so certified is not to obtain payment, but to continue with the bank the custody of the money, the holder can have no greater rights than those of any other depositor. Certainly he has no right of action until payment has been actually demanded and refused. That he stands on the footing of an ordinary depositor is the doctrine of Willetts *v.* The Phœnix Bank, 2 Duer 121. In that case it was said by Chief Justice Oakley, "it is the duty of the officer certifying a check, to cause it to be immediately charged as paid in the account of the drawer, and when this is done the sum thus charged will remain as a deposit in the bank to the credit of the check, and be for ever withdrawn from the control of the maker, except as a holder of the check. Such a deposit stands exactly upon the same ground as any other. The bank, instead of being prejudiced, is benefited by the delay of the owner in calling for its payment, and can with no more propriety impute laches to the unknown holder of the check than to a known holder of an ordinary deposit." Marking a check "good," was held to be an unconditional engagement to hold a sufficient amount of the funds of the drawer to meet the check whenever it should be presented for payment. The Farmers' and Mechanics' Bank *v.* The Butchers' and Drovers' Bank, 4 Duer 219, is to the same effect. The doctrine is sound. Checks on a bank marked "good," are to be regarded as evidences of deposit to the credit of the holder, and laches in making a demand for payment is no more imputable to him than to any other depositor.

These principles were conceded by the learned judge of the

[Girard Bank *v.* Bank of Penn Township.]

District Court, but he was of opinion that inasmuch as there was no evidence, in this case, of any demand made by the holder of the check within six years from the date of the contract, the plaintiffs could not recover. The check was drawn on the 7th of October 1852. When it was certified does not appear, but it probably was when it was drawn. It was not presented for payment until September 3d 1859. Nearly seven years, therefore, elapsed from the date of the deposit before demand was made for its return, and the question now is whether such delay in making the demand bars the plaintiff from a recovery. If it does, then this artificial rule which is said to have been adopted in analogy to the Statute of Limitations, is far more severe upon depositors than is the statute itself. The statute begins to run, not from the date of the deposit, but from the time when the depositor makes demand for payment, and is met with a refusal. This rule completes the bar in six years from the date of the deposit, and as it was applied in the present case, it amounts to a presumption incapable of being rebutted. On the 10th of October 1854, within six years from the commencement of this suit, the defendants paid the money to Adam Dietrich, the original depositor, taking his bond of indemnity against the certified check which he claimed to have lost, though in truth he had endorsed it away. This paying a duplicate check, and taking a bond of indemnity, was a distinct acknowledgment that the money then remained in bank, on deposit to the credit of the holder of the check which had been certified. It was certainly sufficient to rebut any presumption less than a conclusive one, that it had been paid. Now, as no statute requires that, in cases where a creditor must make a demand before he can sue, the demand shall be made within six years from the date of the contract, or action be debarred; any rule exacting demand within that time can have no other basis upon which to rest than a presumption that the debt has been paid, or the deposit withdrawn. What becomes of such a presumption in the face of a clear acknowledgment of the debtor that the debt remains unpaid, or that the deposit is a continuing one?

We cannot agree that there is any such rule applicable to an ordinary case of debtor and creditor, banker or depositor, or bailor and bailee. It would be mischievous in its operation upon contracts generally, and mischievous in the extreme when applied to contracts of bailment. And we think it would be a surprise, were we to hold that banks or other corporations can defend themselves against claims for deposits or undrawn dividends, on the ground that no actual demand has been made for them within six years.

In Thorpe and Wife *v.* Booth, 1 Ryan & Moody 388, 21 Eng. C. L. Rep. 468, it appeared that suit had been brought upon a

[Girard Bank *v.* Bank of Penn Township.]

promissory note dated March 12th 1813, whereby the defendant promised to pay seven hundred pounds "twenty-four months after demand." The note was not presented for payment until June 28th 1823; more than ten years after it was given. The defendant pleaded the general issue and the Statute of Limitations. But the plaintiff was held entitled to recover, on the ground that the cause of action did not arise until twenty-four months after the demand was actually made. That it was not made within six years from the date of the note was treated as of no consequence. This was a case between a simple debtor and creditor. There is even less reason for requiring a depositor to make speedy demand, for it would defeat the very purposes of the deposit.

It is true there are cases, and we have been referred to some of them during the argument, in which it was held to be incumbent upon a plaintiff to make a demand, where actual demand was necessary, within a reasonable time from the making of the contract, and generally within the time limited by the Statute of Limitations for bringing the action. The circumstances of all these cases are, however, peculiar, and none of them were between an ordinary creditor and debtor, or depositor and depositary, or bailor and bailee for custody. The first of them is Codman *v.* Rogers, 10 Pick. 112. It was a bill in equity brought to compel the settlement of a partnership account twenty-five years after the firm had been dissolved, and nineteen years after a partial account had been settled. From 1809 to 1826, no demand was made for a further settlement. The bill was dismissed on account of the laches of the complainant. The observations made by Wilde, J., in delivering the opinion of the court, were unnecessary to the case, mere *obiter dicta*, though worthy of consideration. In remarking upon the time within which demand should be made, where demand is necessary previous to the commencement of an action, he said, a demand must be made within a reasonable time, otherwise the claim is considered stale, and no relief will be granted in a court of equity. What is considered a reasonable time for this purpose does not appear to be settled by any precise rule. It must depend upon circumstances. If no cause for delay can be shown, it would seem reasonable to require the demand to be made within the time limited by the statute for bringing the action. He then proceeded to show that the complainant had been guilty of great laches in lying by for seventeen years, without making any claim, until after the death of the person whose estate he sought to charge, and until after the papers of the decedent had been destroyed by fire, and decreed that the plaintiff was not entitled to relief *in a court of equity*. Surely there is nothing in this case to support the doctrine that a depositor must make a demand for his deposit within six years,

102 SUPREME COURT [*Philadelphia*

[Girard Bank v. Bank of Penn Township.]

or be debarred from recovering it by action. Yet this case is the leader of all the others which have been cited. In the Pittsburgh & Connellsville Railroad Co. *v.* Byers, 8 Casey 22, Same *v.* McCully, 8 Id. 25, and Same *v.* Graham, 12 Id. 77, it was held, that the railroad company having permitted more than six years to pass from the time of subscription to its capital stock, without making calls upon the subscribers, was barred from maintaining an action. The contract of subscription was a peculiar contract; the legislature had fixed five years as the limit within which the construction of the road should be commenced. It was the duty of the company to commence it, and to prosecute it vigorously, and of course, to make the calls without delay. Nothing like a continuing relation of promissor and promissee was contemplated. The parties stood in a very different position towards each other from that which a depositor holds towards his banker, and as the company had taken no steps within the six years to prosecute their road, there was warrant for a presumption that their rights against subscribers to the capital stock had been abandoned. The only other case is Morrison's Administrator *v.* Mullin, 10 Casey 12. There a receipt had been given to the sheriff by a judgment-creditor, for part of the proceeds of a sheriff's sale, with a stipulation, that if on a settlement of the liens on the debtor's interest in the lands sold, the creditor was not entitled to the money received, he would refund it, or so much as he was not entitled to retain. Twenty-two years afterwards the sheriff brought suit on the stipulation contained in the receipt, and the Statute of Limitations was pleaded. This court held that the action could not be maintained in consequence of the sheriff's delay in procuring a settlement of the liens. In fact, the twenty years presumption stood in the way of recovery.

In delivering the opinion of the court, Mr. Justice Thompson referred to the rulings in Codman *v.* Rogers, and Railroad Co. *v.* Byers, but without laying down, or intending to assert a general doctrine that where demand is necessary under a simple contract before bringing an action, it must in all cases be made within six years from the date of the contract.

Indeed all the cases, from Codman *v.* Rogers down, when speaking of the reasonable time within which demand ought to be made, and defining it as generally the statutory period for limitations, add, "when no cause of delay is shown." Even this qualification is an important one as applied to the present case. An early demand would have defeated the object of the deposit, and the certified check was mislaid for years.

Upon the whole, we find nothing in the adjudicated cases which requires us to hold that a depositor is barred of his action against his banker by delaying to call for his deposit more than

six years from the time when he placed the money in bank. And we think such a doctrine would be alike impolitic and unjust.

The judgment for the defendants, *non obstante veredicto*, must therefore be reversed, and judgment entered on the verdict for the plaintiffs.

> Judgment reversed, and judgment on the verdict for the plaintiffs.