## Holmes' Appeal.

1. A purchaser at an executor's sale under an order of the Orphans' Court for the payment of the decedent's debts acquires an inceptive title or interest in the property so purchased at the time it is struck down to him, and judgments entered against him subsequent to the sale but prior to its confirmation by the court, are a lien upon such interest subject to the future confirmation by the court.

2. An executrix sold her decedent's real estate under an order of the Orphans' Court for the payment of his debts to A. on September 1st, 1877, who paid the purchase money on or before September 15th, 1877, the return day of the sale. Exceptions were filed to the sale by other parties in interest, pending which two judgments were entered against A. on July 5th, 1879, and March 12th, 1880, respectively. On June 5th, 1880, the court dismissed the exceptions and confirmed the sale. Subsequently A. conveyed the property to B. In a contest between B. and A.'s judgment creditors:
   *Held,* That the judgments were a lien on the said real estate.

3. Demmy's Appeal, 7 Wr. 168, discussed and distinguished.

November 7th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Court of Common Pleas No. 2 of *Allegheny county:* Of October and November Term, 1884, No. 134.

This was an appeal by John G. Holmes from a decree of the said court, dismissing his exceptions to and confirming the report of a Master appointed to make distribution of the

proceeds of certain real estate, sold under proceedings in partition, in equity, wherein the First National Bank of Birmingham was complainant and John G. Holmes and others were defendants.

The Master found the following facts: On September 1st, 1877, the real estate of William Ihmsen, deceased, was sold by his executrix under an order of the Orphans' Court for the payment of his debts. The purchaser, C. Ihmsen Jr., paid the purchase money on or before September 15th, 1877, the day on which the return of the sale was made to the court. Exceptions thereto were filed by various other parties in interest. On July 5th, 1879, and on March 12th, 1880, while the exceptions were still pending two judgments were entered against C. Ihmsen Jr. by W. G. Crawford & Son and Wing & Evans respectively. On June 5th, 1880, the Orphans' Court entered a decree dismissing the exceptions and confirming the sale. On June 16th, 1880, the executrix delivered a deed for said real estate to C. Ihmsen Jr. and on the day following he conveyed a one third interest therein to John G. Holmes. On the death of C. Ihmsen Jr. proceedings for the partition of the said real estate were commenced by other parties in interest and the real estate was subsequently sold by the Master thereunder. One third of the proceeds of said sale was claimed on the one hand by Holmes and on the other hand by Crawford & Son and Wing & Evans, judgment creditors of Ihmsen as aforesaid.

The master awarded the fund for distribution to the judgment creditors, on the ground that their judgments immediately upon the entry thereof became a lien on the real estate in question, C. Ihmsen, Jr. having acquired an inceptive interest therein by reason of his successful bid, which interest, on the subsequent confirmation of the sale and delivery to him of the deed, had ripened into a perfect title, which had relation back, for purpose of lien, to the day of the sale.

Exceptions filed to said report by John G. Holmes were dismissed by the court (no opinion filed) and the report confirmed. The exceptant thereupon took this appeal, assigning as error the dismissal of his exceptions and the entry of the said decree.

*John Dalzell*, for the appellant.—The essential difference between a sheriff's sale and an Orphans' Court sale is that in the former case the purchaser's title relates back to the date of the sale, while in the latter no title passes until delivery of the deed: Demmy's Appeal, 7 Wr. 168, and cases there cited. The case of Robb *v.* Mann, 1 Jones 300, in so far as it militates against this position is overruled by

Demmy's Appeal, supra. It is argued that the cases on which we rely bear only on disputes between those interested in the decedent's estate, either directly or indirectly, and the purchaser, and not to the relative rights of the purchaser and his creditors. No such distinction is recognized in the cases and it has no warrant in principle. The question is purely one of title in the purchaser and as to the date when it accrued.

*John Barton* (with him *L. C. Barton*), for the appellee.— All the authorities rule that the title of a purchaser at an Orphans' Court sale, as in the case of all judicial sales, upon the confirmation of the sale by the court, relates back for purposes of lien to the date of the sale. The only apparent exception is Demmy's Appeal, 7 Wr. 168. That was an exceptional case and the decision pronounced therein was especially predicated by Judge STRONG on its own peculiar facts. It stands without the current of the authorities and can only be cited as authority for a case between similar parties and containing the same state of facts. It did not overrule Robb *v.* Mann, 1 Jones 300, which was expressly approved in Farmers Mut. Ins. Co. *v.* Graybill, 24 P. F. S. 23. We admit that there are cases, and Demmy's Appeal was such an one, which decide that upon any judicial sale a purchaser may be relieved by the court having control of the process on which the sale was made, if injury to the premises occurs between the day of sale and the confirmation thereof. Especially where delay has been occasioned by one side and the decree of confirmation postponed beyond the ordinary course of practice; in such case the court may in the exercise of its equity powers either refuse to confirm the sale, or confirm it, dependent upon whether the purchaser was or was not the cause of the delay.

But in the present case no loss was caused by the delay in confirmation of the sale, the appellees here were no parties to the exceptions filed to the Orphans' Court sale, and the rights of the parties in that case were adjudicated, at least to the satisfaction of the purchaser, who accepted the deed, paid the purchase money before the entry of the judgments or the return of the sale and afterwards reconveyed the property to another. The purchaser at the Orphans' Court sale is not here complaining of any loss or injury to him that occurred between the date of sale and confirmation. The party here complaining is the vendee of the purchaser at the Orphans' Court sale, who bought with notice of our judgment lien and no doubt indemnified himself out of the purchase money.

The difference between the cases is sufficiently obvious to

show that Demmy's Appeal, supra, has no application to the present case.

Chief Justice MERCUR delivered the opinion of the court January 5th, 1885.

This is a case of the distribution of a fund produced by a Master's sale of the real estate of C. Ihmsen, Jr. The contention is, as to the time when he acquired an estate in the land, which would be bound by the lien of a judgment entered against him.

The controlling facts are these : He bought the property at a sale, made on the 1st of September, 1877, by the executrix of Wm. Ihmsen, deceased, under an order of the Orphans' Court, for the payment of debts. The order was returnable on the 15th of the same month and was then duly returned. On or before that day he paid the whole amount of his bid, some $1,324 thereof in cash, and the residue of the purchase money by giving to the executrix his receipt therefor, as a lien creditor, under the Act of 20th April, 1846, Purd. Dig. 655, pl. 104. Exceptions to the confirmation of the sale were filed by persons interested therein. A decision thereon was delayed until the 5th June, 1880. They were then dismissed, the sale finally confirmed, and the executrix directed to deliver a deed to the purchaser. On the 16th June, the deed was delivered to him, and on the day following he conveyed the property to the appellant.

After the sale and return thereof, but before the final confirmation and delivery of the deed, to wit, on the 15th July, 1879 and the 12th March, 1880, respectively, the appellees recovered judgments against the purchaser. The court held them to be liens on the land and decreed accordingly. This appeal is from that decree.

It is well settled that a purchaser at a sheriff's sale acquires an inceptive title or interest, at the time the property is struck down to him, such an interest as may be bound by the lien of a judgment against him, provided the sheriff's deed has afterwards been duly acknowledged and delivered: Morrison *v.* Wurtz, 7 Watts 437 ; Slater's Appeal, 4 Casey 169. Although in case of a sheriff's sale the title of the debtor is not divested, nor can the purchaser maintain ejectment until the deed has been acknowledged and delivered, yet after it has been, it relates back to the time the land was struck down to the purchaser, for all purposes of lien against him. In Bashore *v.* Whisler, 3 Watts 494, it was said that a sale by an administrator under an order of the Orphans' Court for the payment of debts, is a judicial sale, and that the principles which govern the one are applicable to the other: Potts *v.* Wright,

1 Norris 498.   It was therefore held in Robb v. Mann, 1 Jones 300, that while such a purchaser could not maintain trespass between the sale and the confirmation thereof because he was not in the actual possession of the premises, yet he might maintain case against a wrongdoer for any injury done to the land during that interval of time.

A judgment against the equitable estate which a vendee holds under articles of agreement for the sale and purchase of lands, attaches to, and binds the legal estate, the instant it vests in the vendee: Lynch v. Dearth, 2 P. & W. 110; Episcopal Academy v. Frieze, 2 Watts 16; Foster's Appeal, 3 Barr 80; Lyon v. McGuffey, 4 Id. 128; Waters' Appeal, 11 Casey 523.   Conceding this to be so, and the law to be as we have stated in regard to a lien on the inceptive title acquired by a purchaser at sheriff's sale on the property being struck down to him, yet the appellants contend this rule is not applicable in case of a sale made under an order of the Orphans' Court.   They claim such a sale partakes of the characteristics of a sale made by a Master in chancery.   It is true it has been held in a sale made by a Master the purchase is not complete before confirmation of his report, and that a loss by fire after report of sale and before confirmation, must fall on the vendor: Minor Ex parte, 11 Vesey Jr. 559.   Admitting that a bidder before the Master has no certain interest in, and is not conclusively fixed with any responsibility with respect to the subject of purchase, yet in foot notes to same case it is said " it would rather seem from the cases of Davy v. Barber, 2 Atk. 490, and of Blount v. Blount, 3 Id. 638, if the report be ultimately confirmed, it will have relation back to the time of purchase, whatever contingencies may have occurred in the interim, either increasing or diminishing the value."   That such is the effect of the confirmation is declared in Esdaile v. Stephenson, 1 Sim. & Stu. 123; Paine v. Meller, 6 Ves. Jr. 349; Seton v. Slade, 7 Id. 274.

Although there be some want of harmony both in the English and in the Pennsylvania authorities on the question we are considering, yet perhaps it arises principally from a difference in the facts of the several cases.   In some of them the time of payment was of the essence of the contract.   In others the purchase money was not to be paid, until on or after confirmation.

It is further urged that Demmy's Appeal, 7 Wright 155, holds that the same rule applies to the purchaser at an Orphans' Court sale, that does to one buying at the sale of a Master in Chancery.   It is so stated there, in the opinion of Mr. Justice STRONG, and he does not assent to some of the remarks of Mr. Justice ROGERS in Robb v. Mann, supra.   Much

that was said in Demmy's Appeal was predicated of the facts of the case. The purchase money had not been paid, except the sum required on the property being struck down. No right of a lien creditor of the vendee was involved. It was solely a question between the purchaser on the one side, and the widow and heirs of the decedent on the other. The confirmation of the sale had been delayed at the instance of the widow and heirs, until after a loss by fire occurred, destroying more than one half of the value of the property. The purchaser had been prevented from taking possession of the property at the time fixed in the order and in the conditions of sale. After the fire they desired the sale to be confirmed. The court held, under the facts, it would be inequitable to force the purchaser to take the property.

So in Leshey *v.* Gardner, 3 W. & S. 314, no question arose as to the validity of a lien against the vendee. Although the sale had been confirmed, yet the vendee had not received a deed, nor had he paid the purchase money. A third party in no manner interested in that sale attempted to defeat the legal title of one claiming through the former owner.

Neither of these cases, nor any other cited by the appellant, was decided on facts like those in the case now before us. Here all the purchase money was paid on the return of the order of sale, and presumably according to the order of court and the conditions of sale. Nothing remained to be done on the part of the purchaser. He had performed all that was required of him. He was in no default.

Farmers Mutual Ins. Co. *v.* Graybill, 24 P. F. S. 17, was the case of a sale by an administrator of the real estate of a decedent, the buildings thereon being insured, under an order of the Orphans' Court for the payment of debts. After the sale, but before the return day of the order of sale, the buildings were burned. It was held the action on the policy was rightly brought in the name of the administrator of the former owner to the use of the vendee, and that the latter had sufficient interest to give notice of the loss. The sale was confirmed six weeks after the fire. By the terms of the sale the purchase money was not payable until a certain day, which in fact, was forty days after the confirmation. The deed was made nearly sixty days after the loss. This was a distinct recognition of some interest in the purchaser before any confirmation of the sale, and before the payment of any of the purchase money.

In the present case the purchaser had fully complied with all the terms and conditions of sale prescribed by the court, and announced by the administrator. He had paid all the purchase money required to entitle him to a deed. He had

acquired the whole equitable estate. The legal title only remained in the administrator. The latter held that in trust for the purchaser, awaiting the action of the court's confirmation. When that was obtained it gave the purchaser a right to demand a deed, which should confirm all the equities acquired under his bid, and payment of the purchase money. It follows that when the appellees obtained their judgments against the purchaser, he held an equitable estate in the land, to which the liens of the judgments attached, and the court decreed correctly.

> Decree affirmed and appeal dismissed at the costs of the appellant.