## Morrison v. Blake, Appellant (No. 1).

*Statute of limitations—Trusts and trustees—Demand.*

Where a person receives the money of another and holds it in trust for his principal, the statute of limitations does not begin to run in favor of the person receiving the money until he assumes an attitude hostile to his principal's right, and indicates that his disposition of the money is no longer responsive to his principal's will.

*Contempt of court—Attachment execution—Trust moneys.*

Where a person has been attached for contempt of court for failure to pay over trust moneys, he cannot purge himself of contempt by alleging that the fund had been attached in his hands, without going further and showing that he had answered interrogatories admitting that he held the fund.

A person attached for contempt for not paying over trust moneys cannot purge himself by alleging poverty.

A person attached for contempt of court for failure to pay over trust moneys cannot protect himself from imprisonment by claiming the benefit of the Act of July 12, 1842, P. L. 339, abolishing imprisonment for debt.

Argued Oct. 18, 1906. Appeal, No. 57, Oct. T., 1906, by defendant, from decree of C. P. No. 2, Phila. Co., Sept. T., 1904, No. 2,556, on bill in equity in case of Samuel Morrison v. William J. Blake. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Bill in equity to enforce a trust. Before SULZBERGER, J.

The court entered a decree in accordance with the prayer of the bill.

*Error assigned* in No. 57 was the decree of the court.
*Error assigned* in No. 177 was order for the attachment.

*Thomas R. Elcock*, for appellant.—The claim is barred by the statute : Bowen v. Burdick, 3 Clark, 226 ; Cornog v. Delaney,

11 W. N. C. 575; Coal Co. v. Huntzinger, 6 W. N. C. 300; Evans's App., 81 Pa. 278.

A decree in equity for the payment of money cannot be enforced in Pennsylvania since the Act, of July 12, 1842, P. L. 339 : Scott v. The Jailer, 1 Grant's Cases, 237; Pierce's Appeal, 103 Pa. 27; Cochran v. Gowen, 9 Phila. 299.

*E. Spencer Miller*, for appellee, cited : Ireland v. Stockbar, 14 W. N. C. 126; Hopkinson v. Cooper, 8 Phila. 8; Wilson v. Wilson; 142 Pa. 247 ; Chew's App., 44 Pa. 247 ; Batdorff's Case, 13 W. N. C. 417 ; Emerson v. Dow, 11 W. N. C. 270.

OPINION BY HEAD, J., April 15, 1907 :

The court below found as a fact that the plaintiff and James Morrison were the real owners of the property, from the sale of which the fund in controversy arose, and that the legal title thereto had been placed in Blake, the appellant, who was their brother-in-law, simply for the convenience of these owners.    Further, that the appellant had in his hands the sum of $1,800 remaining from the sale of said property, of which sum the one-half, $900, belonged to the plaintiff.    A decree was accordingly made directing the appellant to pay to the plaintiff the said sum with interest, and this appeal followed. Upon exceptions to these findings they were reviewed by the court in banc and approved.    They therefore have all the force and effect of a verdict.    In such cases exceptions to findings of fact cannot be made the ground for a reversal in this court unless it appear that the findings are unsupported by evidence legally sufficient, or rest upon inferences improperly drawn from the facts established by such evidence.

The opinion of the learned court below reviewing the evidence so completely vindicates the conclusions reached that but little can be added to its force or effectiveness.    We therefore content ourselves by stating, as briefly as we may, the salient facts.

Prior to January 20, 1894, James Morrison was the owner of the lot described in the bill.    On that day he made and delivered a deed for it to Blake, and this conveyance is the foundation on which the claim of Blake to the property, or any part of the money arising from its sale, rests.    The considera-

tion named is $500, no part of which the court finds was paid. Apart from that, it is certain that after the deed, as before it, James Morrison continued to exercise every external right of ownership over the property. He continued to occupy it without a lease or payment of rent, paid the taxes, discharged the ground rent, etc. On March 14, 1895, more than a year after the date of the deed, James Morrison entered into an agreement in writing with the plaintiff for establishing a partnership business on this property. In this paper he agrees to sell a half interest " of business and stock and lot or piece of ground, etc.," describing the very same lot covered by his previous deed to Blake. In other words, he was to turn over to the firm, as his contribution to the common stock, this lot of ground, his ice business and the personal property used in connection therewith. The plaintiff was to contribute $3,400 as follows: $1,300 in building material to be used in improving the property, and $2,100 in cash, or other real estate, etc. This paper was written by Blake and is witnessed by him. The plaintiff thereupon entered into joint possession and began the construction of the improvements.

Each party under the agreement gave to the other a judgment note for $3,400 as security for the performance of the contract. That given by James to the plaintiff was signed also by Blake because he held the legal title to the lot. Differences having arisen between the partners, two arbitrations were held to adjust them. In the second, Blake was the umpire. He wrote both awards, signed the first as a witness and the second as arbitrator. Both clearly recognize James Morrison and plaintiff as the owners of the property. Later a corporation was promoted to take over the property and business. Meantime an additional piece of property had been secured and the title had been put in Blake also. As to this he admits he paid nothing and knew nothing about it. The consideration received from the corporation by its vendors for the property and business was a mortgage for $4,000 and about $17,000 in the capital stock of the company. Blake made and delivered the deed for both properties, but received no part of the capital stock, that being at once divided between the two real owners. The mortgage was made to Blake because he had the legal title and to avoid any question of priority that

might arise had separate mortgages been given to each owner. The land bound by the mortgage was subsequently sold at sheriff's sale to satisfy earlier liens, and upon distribution of the fund the sum of $2,800 was awarded to Blake as the record owner of the mortgage. He subsequently paid over to the plaintiff and James Morrison $500 each, thus leaving $1,800 in his hands which he still held at the time of filing the bill in this case. To several witnesses Blake admitted that he held the money and would pay it over as soon as the Morrisons would agree. For instance, he said to the witness Andrew Convery: "I have got the money here—I have got the money. It don't belong to me, but when Samuel Morrison and James will agree I am ready to pay the money."

Finally, the collateral note for $3,400 which had been signed by James Morrison and Blake and given to the plaintiff, as we have seen, had been entered of record. A joint petition was filed by the defendants to have the judgment opened. It was signed and sworn to by both. After setting forth the agreement of March 14, 1895, already referred to, the petition states:

"The said defendant, William J. Blake, had no interest in said co-partnership, and he was simply made a party to said judgment note because the title to the ground upon which the building, subsequently sold to the ice company, was erected, and which was the joint property of said Samuel and James Morrison," etc.

The array of facts thus far adverted to, most of which are scarcely, if at all, disputed, coupled with the direct evidence of the plaintiff, certainly furnishes ample warrant for the findings by the court, that, at the time of the sale of the property to the ice company it was owned by the plaintiff and James Morrison; that the purchase money arising from that sale, including the mortgage of $4,000, also belonged to them; that William J. Blake had no interest in either, but was requested or permitted to take and hold the title to the land and later the mortgage only for their use and convenience and as a consequence, that the one-half of the money still in his hands, viz: $900, belongs to the plaintiff Samuel Morrison. These facts having been thus finally established, before a proper tribunal, and no reasons, legal, equitable or moral having been shown why the defendant Blake should longer withhold the money of

the plaintiff, a decree that he should pay it over naturally followed.

Some effort is made in the argument to interpose the statute of limitations as a bar to the plaintiff's right to a decree, but it is not convincing. We do not find in Pepper et al. v. Robinson, 32 W. N. C. 200, cited by the learned counsel for appellant, any warrant for the conclusion that the statute could avail the defendant under conditions like those that now present themselves.

In Girard Bank v. Bank of Penn Twp., 39 Pa. 92, it was held that the implied contract between a bank and its depositor was to pay only upon a proper demand and, as a consequence, no right of action would accrue to a depositor and the statute of limitations would not begin to run, until after demand and refusal to pay. The principle thus announced we regard as applicable here. When the money awarded to the mortgage was paid over to Blake, the evidence does not disclose that any directions whatever, in writing or by parol, were given as to its disposition or use. It was received by him as the agent or representative of the real owners, and the law would raise an obligation or imply a contract on his part to pay it over to them on their demand. Until he would assume an attitude hostile to their right and indicate that his disposition of their money would no longer be responsive to their will, no right of action would accrue to them or either of them and hence the statute would not begin to run. The assignments of error must therefore be overruled.

The defendant not having paid over the money, in accordance with the terms of the decree, a rule was granted to show cause why an attachment should not issue. An answer was filed in which the defendant set up.

(*a*) That an attachment execution had been issued out of common pleas No. 5 of the same county against Samuel Morrison as defendant and the respondent, Blake, as garnishee, which was still pending:

(*b*) That he was absolutely without money or property to enable him to satisfy the decree:

(*c*) That he was advised by counsel that under the law he could not be attached or imprisoned because of his inability to obey the decree and pay the money.

The rule having been made absolute an appeal was taken to No. 177 October Term, 1906, of this court. As both appeals were argued together on one set of paper-books, we will here give our reasons for our disposition of the second appeal so as to avoid a restatement of the facts.

That the first reason set up by the answer ought not to prevail is sufficiently apparent. There is no allegation that respondent had yet answered any interrogatories in the attachment execution admitting that he had in his hands any money of Samuel Morrison, the present plaintiff. For aught that appears of record he may never there be required to answer, and, if so required, he might set up the pendency of this proceeding in equity as a defense. Thus the present plaintiff and his alleged creditor in the attachment execution would both be left remediless, while the respondent would remain in the undisturbed possession and enjoyment of a large sum of money to which, it has been determined, he has no right. The futility of such an effort to purge himself of contempt is so plain as to invite no further comment.

Nor is the second reason assigned more potent than the first. The mere answer of a trustee that he has wrongfully wasted or otherwise stripped himself of the trust fund, may not stay the arm of a chancellor when the day for accounting has arrived, else indeed would his decree be but an empty name, and breaches of trust would become common by reason of their immunity from any dangerous consequences.

If a court of equity cannot enforce a decree for the payment of money, such as was entered in this case, it must be because of the third reason assigned in the answer to the rule ; or, in other words, because the act of July 12, 1842, P. L. 339, abolishing imprisonment for debt, took away from such courts a power which, before that time, they undoubtedly possessed. It has been well said by a distinguished jurist that " the act of 1842, abolishing imprisonment for debt, is one of those great landmarks of legislation which point, not only to a great change in the law, but also to a great revolution in popular sentiments and manners. Its provisions are not to be repealed by artificial distinctions or nice and subtle reasonings." It is neither our right nor our inclination to even attempt, by judicial decision, to take away any privileges or immunities conferred by a

humane act of the legislature on a large class of people who, without breach of trust or violation of duty, have become the victims of financial misfortune, and are thus rendered unable to pay their debts or discharge other contractual obligations. But it is to be observed that the act of 1842 expressly excepts from its operation a considerable class of cases. As to such cases we must administer the law as if the act had never been passed ; the exception is just as forceful and binding on us as the prohibition.

That the prohibition of the act applies to proceedings in equity as well as at law cannot be doubted. " No person shall be imprisoned on any civil process issuing out of any court . . . . in any suit or proceeding instituted for the recovery of any money due upon any . . . . decree founded upon contract, or due upon any contract, express or implied," is the language of the statute. Had the act stopped here there would be little difficulty in its construction. It is in the exception to the general enacting clause above quoted, viz. : " excepting in proceeding, as for contempt, to enforce civil remedies," etc., that we find the debatable ground.

In construing this act the courts have ever looked beyond the form into the real nature of the transaction to determine whether it fell within the prohibition of, or the exception to, the statute. If the obligation to pay is founded upon a contract, express or implied, the refusal or inability to pay is but a breach of the primary underlying contract, and the defaulting debtor must, in obedience to the supreme legislative will, be given the benefit of the prohibition declared in the statute. If, on the other hand, the obligation to convey, to account, to pay, or to do any other particular thing, be but one of the incidents attached by law to the voluntary assumption of a certain relation by one man towards another, then his refusal to do that thing is a violation of a legal duty. Such refusal, if persisted in after a final decree has been entered against him, puts him in contempt, and classifies his case with those excepted from the operation of the act. But it may be said that in every case where one contracts to pay it is his duty to perform his contract, and conversely, that where it is one's duty to pay money, for instance, the law will imply a contract to pay. Paucity of language, however, or inaccuracy in its use,

must not be permitted to lead to confusion of thought. In the one case, the law simply recognizes and enforces, as far as may be, the contract into which two persons have voluntarily entered, or are presumed to have entered, with the making of which the law has nothing whatever to do. In the other case the law of the land prescribes certain duties that must be performed by every man who undertakes to place himself in the position to which the discharge of these duties has been attached. His obligation to perform them arises not from the union of his will with that of another individual like himself, but from the mandate of the law. Hence, such obligation is, strictly speaking, legal rather than contractual, and his refusal to perform may be fairly and properly termed an infraction of a legal duty and not merely a breach of contract.

Thus in Pierce's Appeal, 103 Pa. 27, one of two partners had closed up the joint business but refused to account. Upon a bill filed for the purpose an account was taken, and this resulted in a decree for the payment of a considerable sum of money, with costs, etc. The decree not having been complied with the court attached the defaulting partner. The order was reversed because it was held the obligation to pay arose out of the private contract of partnership. But in Chew's Appeal, 44 Pa. 247, it was held that a trustee may be attached to enforce a decree that he pay over " trust money " in his hands, because such a proceeding is, by the exception already quoted, taken out of the enacting clause of the act of 1842.

Was Blake a " trustee " of the money of the plaintiff which was the subject of the decree ? It is a well-established rule in such cases that if the relation of " trustee " and cestui que trust be once established as to certain property in the hands of the former, no mere change of the trust property from one form to another will destroy the relation. The court below has found, upon abundant evidence, that when the title to the real estate was first taken in his name, Blake had no beneficial interest or ownership in it whatever. He was a naked trustee of the legal title, whose duty it was to hold or convey it according to the will of the real owners. Had a bill then been filed, and the facts now appearing been established, a decree would surely have followed requiring him to convey the

legal title to the Morrisons. Can it be doubted that his refusal to obey such a decree would have warranted an attachment? At that time he made no denial of his trusteeship, and when the owners sold to the corporation he made the deed on their demand and allowed them to take all of the purchase money then paid. For reasons already stated his trust was continued as to the mortgage securing the balance of the purchase money, and because of that trust he was enabled to take from the sheriff the money awarded to the mortgage after the judicial sale of the real estate. This money is a portion of the same property which, when in the form of real estate, he certainly held in trust for the present plaintiff. The same trust and confidence that formerly put the legal title to the land in him has put the money which in part represents that land, in his pocket. His relation to the money is not different from what it was to the land. His refusal to pay it over is a violation of his trust, and a breach of the legal duty imposed on him by the law when he agreed to take and hold the title for the real owners. He must, therefore, submit himself to the order of attachment until he shall have complied with the decree, or can satisfy an appellate court that the powers of the court below have been, or are, being abused.

At No. 57, October Term, 1906, the decree is affirmed and appeal dismissed at cost of appellant.