## Wood v. Pennsylvania Railroad Company

*Maurice G. Belknap*, for plaintiff; *Barnes, Biddle & Myers*, for defendant.

LEWIS, J., September 14, 1934.—On January 10, 1933, plaintiff recovered a verdict in the sum of $1,000 in his trespass action against defendant. Judgment was entered March 6, 1933, and execution issued March 28, 1933. Thereafter, but on the same day, defendant appealed the judgment to the Superior Court, but since such appeal could no longer operate as a supersedeas defendant was obliged to and did pay the judgment under the stress of the execution. On February 1, 1934, the appellate court reversed the judgment and entered judgment for defendant, and on April 12, 1934, awarded defendant restitution, on account of which plaintiff has paid only the sum of $4.75. The defendant now petitions this court to commit plaintiff for contempt. Plaintiff has filed an answer pleading inability to comply with the order of restitution.

Depositions were taken in the contempt proceedings, and from those depositions we find that plaintiff in fact spent all the moneys received from the defendant in the belief that he was entitled thereto ($250 thereof went to his attorney in the proceeding for fees and costs). We find, also, that he does not presently have the funds wherewith to meet his obligation to defendant. Should the plaintiff under the circumstances be committed for contempt?

The defendant's right to an attachment of plaintiff's person is of course controlled by the Act of July 12, 1842, P. L. 339, sec. 1, which provides: "No person shall be arrested or imprisoned on any civil process issuing out of any court of this Commonwealth, in any suit or proceeding instituted for the recovery of any money due upon any judgment or decree founded upon contract, or due upon any contract, express or implied, or for the recovery of any damages for the non-performance of any contract, excepting in proceeding as for contempt, to enforce civil remedies, action for fines or penalties, or on promises to marry, on

moneys collected by any public officer, or for any misconduct or neglect in office, or in any professional employment, in which cases the remedies shall remain as heretofore."

The question before us, therefore, is "whether the order [of restitution] in the present case was designed to compel obedience to a decree for the payment of money arising from a contract," express or implied, in which event the order comes within the prohibition of the act: Commonwealth ex rel. v. Heston, Superintendent of Prison, 292 Pa. 63; or whether the order falls within the exception and in favor of "proceeding as for contempt, to enforce civil remedies": Scott v. The Jailer, 1 Grant 237; Morrison v. Blake (No. 1), 33 Pa. Superior Ct. 290. The identical question here involved apparently has never arisen in our State. However, the nature of the order upon plaintiff, as well as the principles controlling the construction of the Act of 1842, leaves no doubt as to what our conclusion should be.

"In construing this act the courts have ever looked beyond the form into the real nature of the transaction to determine whether it fell within the prohibition of, or the exception to, the statute": Morrison v. Blake, supra, p. 296, and "we must not lose sight of the main object of the statute, which was to relieve from imprisonment in all cases where no offence appears except that of omitting to pay money due on a contract [express or implied]": Scott v. The Jailer, supra, p. 238; Ross v. Dever, 298 Pa. 146; Commonwealth v. Heston, supra.

What, then, is the nature and character of the order of restitution, and what is the nature of respondent's obligation to defendant, and wherein does it have its source? For a learned discussion of these questions, it is interesting to examine the dissenting opinion of Justice Cardozo in Reed et al. v. Allen, 286 U. S. 191, and for an excellent summary of them one may turn to 2 R. C. L. 291, et seq. From these we deduce the principles that "a subsisting judgment of a court which had jurisdiction of the parties and subject matter . . . constitutes a sufficient justification for all acts done in its enforcement until it is reversed or set aside by competent authority": 2 R. C. L. 291. See also Gould v. McFall, 118 Pa. 455. Undoubtedly, the reversal of an erroneous judgment raises in law an obligation against one who has received the benefit thereof to make restitution to the other party of any money or property that may have been received. ". . . The liability for restitution is not founded on any supposed wrong on the part of the appellee in enforcing the judgment, but on the ground that in equity and good conscience he ought, after reversal, to restore to the appellant everything of value which he received on account of the erroneous judgment": 2 R. C. L. 293, and, in Pennsylvania at least, "restitution is not of mere right. It is ex gratia, resting in the exercise of a sound discretion, and the court will not order it where the justice of the case does not call for it": Gould v. McFall, supra, p. 456. It has been held that the right of restitution may be enforced by a writ of restitution in the original proceeding or by an independent suit as for money had and received: Haebler et al. v. Myers et al., 132 N. Y. 363.

The amount of the verdict having been acquired by the plaintiff under a claim of absolute right at the time fully justified, it must be that the subsequent disposition thereof falls under the same category. The money was not put by the plaintiff (the respondent herein) beyond his reach in contravention of any duty then existing to preserve it for any future purpose. His duty to make restitution arises out of an implied contract which came into force and being upon the subsequent reversal of the judgment and which cannot color or taint with fraud his prior acts. There is no fraud involved in plaintiff's conduct,

either actual or constructive. We think that such an obligation must be held to fall within the prohibition of the Act of 1842 against imprisonment for debt and not within its exception.

Our conclusion is strengthened by the decision of the Supreme Court in Brierhurst Realty Co. v. Lembrecht et al., 299 Pa. 9. In that case, the plaintiff, the owner of an apartment house, employed defendants, real estate brokers, to collect rents due from tenants and to account generally as its rental agent in connection with the premises. Plaintiff filed a bill in equity praying for an accounting, and a decree was entered in its favor in the sum of $4,444.56. The Supreme Court, holding that an attachment could not issue for nonpayment of this decree, said: "Here the amount sought to be collected was not a trust fund, but a sum due under an agency employment as real estate brokers, to collect rents. The amount in controversy is merely a debt due under that employment. Com. ex rel. v. Heston, 292 Pa. 63, also cited by appellant does not support its contention, but on the contrary rules the present appeal against it. There an attempt was made to enforce by attachment payment of money arising under a contract in which no question of trust was involved, and we held such proceedings were not permissible since the passage of the Act of July 12, 1842, P. L. 339. Here a similar attempt is being made to collect a debt which arises under a contract of employment. See also Ross v. Dever, 298 Pa. 146."

We conclude, therefore, that, plaintiff having received the money as due to him under a valid judgment, there was no impropriety in his using it as his own and that a subsequent reversal of the judgment, while it raises a promise on his part to repay it, does not subject him to imprisonment as for contempt, especially when he no longer has the means wherewith to carry out that implied promise. If it is to be held that plaintiff is not absolutely entitled to a discharge but that the matter is within our discretion, we certainly do not consider this a proper case for the exercise of our discretion to attach plaintiff's person.

The petition for the attachment is dismissed.