First National Bank of Newton v Needham.

---

FIRST NATIONAL BANK OF NEWTON v. NEEDHAM.

1. **Bill of Exhange :.** LATENT INFIRMITIES : PRESENTMENT. Though a bill of exchange is not technically due until after presentment, yet an indorsee may take it under such circumstances as that it will be treated as a stale demand, and subject, in his hands, to the same equities that it would have been in the hands of the payee.

2. ——What amount to due diligence in the presentment of a bill of exchange, necessary to charge the drawer, is to be determined from the circumstances of each case.

First National Bank of Newton v. Needham.

*Appeal from General Term Sixth District (Jasper County).*

TUESDAY, JULY 26.

DEFENDANT Needham and his co-defendant Anderson were, on the 7th of December, 1868, residents of Racine, Wis. On that day he drew his check upon a bank in that city in favor of Anderson, as follows:

"RACINE, WIS., *December* 7, 1868.

"D. B. Northrup & Co., bankers.—Pay to A. Anderson, or bearer, fifty dollars, ($50).

WM. L. NEEDHAM."

The drawer then had funds in the bank sufficient to pay this check. In February, 1869, he withdrew all his funds, and he and the payee removed to this state.

May 6, 1869, Anderson negotiated this check to plaintiff, who paid a full consideration therefor, without actual notice of any defense thereto. Needham was then doing business but a few doors from the plaintiff, was a customer, and was then well known, but no inquires were made of him as to the correctness of the check. The check was duly presented to the drawee, payment refused and there was due protest and notice. In addition to these facts, plaintiff found, by the testimony of Anderson, that the check was given in payment of $50, that the drawer requested him not to draw the money until he needed it, and that he (Needham), never asked him for it.

Upon the part of the defendant (the drawer) it was proposed to prove that when the check was drawn Anderson professed to need the money at once, and that he was told to take it and draw the funds; that afterward, in February, 1860, the drawer told him to get his money, as he was about to settle with the bank and close his account there, and his business in Racine; that Anderson said the

drawer could let him have the money as he wanted it, and that he would keep the check as a memorandum until they settled again, and that this was agreed to as all right; that Anderson knew that Needham had settled with the bank, and this, too, while he still held the check; that he had paid Anderson the full amount of the check after leaving Racine and before its transfer to plaintiffs. All this testimony was objected to, however, and excluded by the circuit court as "immaterial, irrelevant, and not binding on plaintiff," who accordingly had judgment.

In the general term this ruling was reversed, and plaintiff appeals to this court.

*Clark & Ryan* for the appellant.

*D. Ryan* for the appellee.

WRIGHT, J.—It is not material in this case to inquire whether the drawer of this check was discharged by reason of delay of presenting the same for payment. The real inquiry is, whether the court or jury might not, under the circumstances, conclude that plaintiff took it subject to the equities or defenses existing in favor of the drawer against the payee.

The rule is recognized, that this check was not due until presented to the bank, and demand of payment there made. This is certainly so, as to the right of action against the drawer, the meaning of the statute of limitations, and the like. We here keep out of view cases of fraud in drawing the check, or entire want of funds, and full and clear knowledge that there were and would be none.

And while, for most purposes, the drawer of such an instrument before demand is in a like position with the maker of negotiable paper before due, it is nevertheless proper, in measuring the rights and liabilities of parties,

to keep in mind the nature of such paper, its object and purpose, and the usual course of business in connection therewith.

Remembering these propositions, let us look at the facts in this case. Plaintiffs purchased this check five months after it was drawn. It was drawn upon a bank hundreds of miles away, and by a party doing business with plaintiff, who resided in the same place, within a few doors, and yet of whom no inquiries whatever were made. The drawer and payee both resided in the place where the check was drawn, and where the drawee transacted business, and where it was to be paid, and left for their new homes and there settled, months before this negotiation. Plaintiff had undertaken to explain the delay in presenting the check for payment, by proving a request from the drawer to the payee not to apply for the money until it was needed.

Upon these facts, in this state of the record, the testimony offered was admissible upon two grounds: 1. To rebut the case made by plaintiff, showing excuse for delay in making presentment. Due diligence was necessary to charge the drawer, and what amounts to such diligence must be determined from the circumstances of each case. 2. Though before such presentment a check would not, technically, be due (as heretofore explained), yet a party may take it under such circumstances as that it must be legitimately treated as a stale demand, he acquiring no higher title than that of the payee, and subject to like equities. If thus stale, the defense of payment would certainly be good, for nothing could more necessarily control, qualify or extinguish the right to recover thereon. The defense attaches to the instrument itself, and in no legal sense arises out of other and independent transactions between the parties.

Affirmed.