# Bulliet, Trustee, v. Allegheny Trust Co., Appellant.

*Banks and banking—Certification of check by telegraph—Application by holder—New obligation—Defenses—Endorsement—Estoppel—Escrow—Act of May 16, 1901, P. L. 194.*

1. Where the holder of a check inquires by telegraph of the bank on which the check is drawn whether the check will be honored, and the bank by telegraph responds that it will, such action by the bank amounts to a certification of the check.

2. The effect of such certification at the request of the holder is to create a new obligation on the part of the bank, whereby the holder becomes in fact a depositor, and the bank cannot, thereafter, in a suit against it on the check, set up any defenses which the maker might have as against the holder.

3. A bank cannot set up as a defense a delay in presenting a check which it had certified, and especially is this so where the bank has notice that the check was not to be payable until a day stated, and on this day it was mailed for collection.

4. So far as the bank is concerned, demand for payment of a certified check may be made upon it at any time within the statute of limitations.

*Banks and banking—Endorsements—Objection—Estoppel.*

5. Where a check has been returned by a bank for lack of proper endorsement, and it is then returned to the bank with additional endorsements to which the bank makes no objections, the bank cannot, after suit brought on the check, again object to the endorsements; the bank is estopped from doing so.

6. Where a certified check is to be held in escrow in accordance with an agreement for the sale of property, the bank on which it is drawn cannot object to the insufficiency of the endorsements, where it appears that they were regular, and followed the course of the agreement of sale, and were in consonance with the disposition of the money as provided therein.

Argued October 9, 1925. Appeal, No. 160, March T., 1925, by defendant, from judgment of C. P. Allegheny Co., July T., 1920, No. 946, on verdict for plaintiff, in case of V. J. Bulliet, Trustee for Woolfolk Oil Co. v. Allegheny Trust Co. Before MOSCHZISKER, C. J., FRA-

ZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on check for $5,000. Before REID, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $6,797.35. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*George Wallace,* of *Wallace, Patterson & Collin,* for appellant.—The acceptance is in writing with reference to a bill not drawn or delivered, the bill when drawn must be of tenor in accordance with the actual acceptance: Coolidge v. Payson, 2 Wheat. 66; Nat. Bank v. Weil, 141 Pa. 457.

In the court below plaintiff insisted that the bank could not raise defenses which were not stated in the letter returning the check, these defenses being held to be waived. We apprehend this is not the law: Bush v. Fire Ins. Co., 222 Pa. 419.

No check having been presented therefore in accordance with the tenor of the telegram sent by the bank, it is relieved of payment finally; the defaults referred to cannot now be cured: Smeich v. Herbst, 135 Pa. 539.

*Francis R. Harbison* and *Watson & Freeman,* for appellee.—The undisputed evidence in this case shows no delay on part of plaintiff in presenting the check to defendant for payment: Murphey v. Greybill, 34 Pa. Superior Ct. 339; Weisenberger v. Huebner, 264 Pa. 316; Fertig v. Bucher, 3 Pa. 308; Honesdale Ice Co. v. Imp. Co., 232 Pa. 293.

Defendant was not justified in refusing payment of the check on the ground that the endorsement was of a conditional character, or otherwise insufficient under

the Negotiable Instrument Law: White v. Nat. Bank, 102 U. S. 658.

OPINION BY MR. JUSTICE SCHAFFER, November 23, 1925:

This action was brought against the defendant trust company on a check for $5,000 drawn by C. C. Mitchell to the order of Grove McNair which the defendant had undertaken to honor.

C. C. Mitchell was negotiating in Louisville, Ky., for the purchase of an oil property; Grove McNair was his agent in the transaction. The memorandum agreement of sale between the parties provided that Mitchell would place in the hands of N. C. Bolling & Company $5,000 in escrow in evidence of good faith that he would pay the remainder of the purchase price. The agreement contained a provision that in the event of Mitchell's failure to carry out his undertaking, the $5,000 should be forfeited to the seller, V. J. Bulliet, trustee for the Woolfolk Oil Company. To meet the requirement of the agreement of purchase, Mitchell drew his check to the order of McNair for the sum named; it is dated February 10, 1919. Mitchell after drawing the check returned to Pittsburgh, made his account in the bank good for the amount of it and in response to a telegram from Bulliet to the defendant inquiring whether it would honor Mitchell's check for $5,000, defendant replied by wire that it would. This amounted to a certification of the check: Brady, The Law of Bank Checks (1915), section 230, at page 347; Banking Law Journal Digest (Brady, 1924), section 214; 7 Corpus Juris, page 705; Farmers' & Merchants' National Bank of Winchester v. Elizabethtown National Bank, 30 Pa. Superior Ct. 271.

Mitchell failed to make the payments as provided in the agreement, the first of which was payable on February 13th (the time for this payment was extended to February 15th) and the check for $5,000 was deposited in a bank in Louisville on the latter date. When

presented for payment, defendant, owing to its having received a notice from Mitchell to stop payment of the check, refused to honor it and wrote a letter saying that the check was returned "on account of the endorsements of same, and also because Mr. Mitchell has requested me to withhold payment until some matters in connection with the deal are cleared up." Nothing was said about delay in presentation of the check. Additional endorsements were placed upon the check and it was again forwarded to defendant for payment. On receipt of the check, defendant wrote to the bank in Louisville but raised no question as to the endorsements. In this letter defendant acknowledged that it had sent the telegram agreeing to honor the check but said that Mitchell had directed it not to pay as he claimed the agreement of sale had not been fulfilled.

The first position assumed by appellant is that there was delay in presenting the check, the clearance time between Louisville and Pittsburgh being twenty-four hours, and that by reason thereof it is relieved from its undertaking to pay. From an examination of the testimony it is not apparent that there was any delay in the presentation of the check. While it is dated February 10th, under the terms of the agreement of sale, it was to be applied against the first payment on account of the purchase money which fell due on February 13th, which was extended by an oral agreement to February 15th, and was not to be forfeited to the seller as liquidated damages unless that payment was not made. Mitchell had all of the day of the 15th to make the payment. The check was mailed on that day by the Louisville bank to the defendant. It is the contention of appellant that as the defendant sent its telegram on February 11th saying it would honor the check, the check should have been forwarded not later than the 12th and should have arrived in Pittsburgh for payment on the 13th, whereas it did not arrive until the 16th or 17th. Even if it should be concluded that a bank can, under the circumstances

here shown, set up the defense of delay in presentment against a check which it has certified, which we think not the law, there was no requirement that the check should be used or forwarded before February 15th, the day on which it was mailed, as until that day it was not payable on account of the purchase price and not forfeitable in the event that the first installment thereof was not paid. Defendant's telegram promising to honor the check was an acceptance of it. The Negotiable Instruments Law in effect so provides, section 187, Act of May 16, 1901, P. L. 194: "Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance." The Negotiable Instruments Law expressly provides for acceptances by separate paper. "Where an acceptance is written on a paper other than the bill itself, it does not bind the acceptor except in favor of a person to whom it is shown, and who, on the faith thereof, received the bill for value": Act of May 16, 1901, P. L. 194, section 134. Acceptance on a separate paper was held good in Steman v. Harrison, 42 Pa. 57. A delay in presenting a check to the bank for payment which the bank has accepted or certified will not discharge it from the obligations to pay: Norton on Bills & Notes, pages 588 et seq. Where a check is certified at the instance of the holder (as this one was) the drawer and endorsers are thereby discharged (Negotiable Instruments Law, Act of 1901, P. L. 194, 219, section 188) so that the rule requiring presentment of a certified as well as an uncertified check within a reasonable time *in order to charge the drawer* has no application. So far as the drawee bank is concerned, demand for payment of a certified check may be made upon it at any time within the statute of limitations: Brady, The Law of Bank Checks (1915), section 80, and cases there cited. "The certification constitutes a new contract between the holder and the bank......By certifying, the drawee bank enters into an absolute agreement to pay the check upon presentment at any time within the time

fixed by the statute of limitations: Brady, The Law of Bank Checks (1915), section 232. In Smith v. Hubbard, 205 Mich. 44, 171 N. W. Repr. 546 (1919), it is stated (p. 548): "Checks are by custom certified, in order that the holders may in their business transactions make use of them as a substitute for money, and in their function to that end in the business world they are not expected to be as promptly returned to the bank issuing them for redemption as ordinary checks, notes or similar negotiable paper."

Nor do we think appellant is in any better case in its second position so far as the endorsements are concerned. After the check was returned to it the second time with additional endorsements and when it sent the paper back, no dissatisfaction was expressed as to the endorsements. Defendant cannot be permitted to prejudice plaintiff's position now, not having raised it in the first instance. "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law": Honesdale Ice Co. v. Lake Lodore Improvement Co., 232 Pa. 293, 300, quoting from the leading case of Railway Co. v. McCarthy, 96 U. S. 258. The rule is founded on equitable estoppel: Second Nat. Bank of Allegheny v. Lash Corp., 299 Fed. 371 (C. C. A. 3d Cir. 1924). Not having raised the question before, when, if there had been any substance in the objection to the endorsements, plaintiff might have corrected any error, defendant is estopped from interposing the defense now after suit is brought.

But the objection to the endorsements is without foundation. They were regular, followed the course of the paper and were in consonance with the disposition of the money as provided in the agreement of sale. The check was drawn to McNair; he endorsed it "to the

order of V. J. Bulliet, trustee for the Woolfolk Oil Co.,
and placed in hands of N. C. Bolling & Co. as escrow
agt. as part of escrow agreement between C. C. Mitchell
and V. J. Bulliet," and it was also endorsed by Bulliet
as trustee "for deposit in joint account with N. C. Boll-
ing & Co. as escrow agent" and by Bolling & Co. as
escrow agents to the order of Bulliet as trustee and by
him in that capacity. The prior endorsements were
guaranteed by the Louisville bank in which the check
was deposited and that bank endorsed the paper. We
think the defendant would have been fully protected by
the endorsements in paying the check.

The third and real defense attempted by the defend-
ant was to put itself in the position of Mitchell and to
make the defense against the check that he might have
made if he had still been liable on it, and to show as
incidental to this defense that the plaintiff had no record
title to the property on account of which the check was
given. In being permitted to make the defense which
Mitchell might have made, appellant was accorded a
greater privilege than it was entitled to. As between it
and the plaintiff, no such defense was available. Its
undertaking was absolute and unconditional to honor
the check and it could not by interposing a defense avail-
able to Mitchell repudiate what it had bound itself to
do. To hold otherwise it would be necessary to ignore
the effect of the certification of a check at the instance
of the holder. The Negotiable Instruments Law, section
189, provides that a check does not operate as an assign-
ment of the funds unless the drawee bank certifies it
"and the bank is not liable to the holder unless and until
it accepts or certifies the check" but when it accepts or
certifies it is liable to him. The effect of the bank's
certifying a check at the request of a *holder* is to create
a new obligation on the part of the bank to that holder,
the amount of the check passes to the credit of the
holder, who is thereafter a depositor to that amount:
Negotiable Instruments Act, section 188; Central Guar-

antee Trust and Safe Deposit Co. v. White, 206 Pa. 611; Girard Bank v. Bank of Penn Township, 39 Pa. 92. In Joyce, Defenses to Commercial Paper (2d ed. 1924), vol. 2, sec. 850, it is said: "By the law merchant of this country, the certificate of the bank that a check is good is equivalent to acceptance. It implies that the check is drawn upon sufficient funds in the drawee's hands and that they have been set apart for its satisfaction and that they shall be so applied whenever the check is presented for payment. It constitutes an undertaking not only that the check is then good but that it will continue good. Such an agreement is as binding and obligatory upon banks as their notes of circulation, or any other valid obligation. The purpose of certifying a check as regards both parties is to enable the holder to use it as money." And again in the same work, the author says upon proper authority (vol. 1, sec. 228): "The certification of a check on application of the drawer does not operate to discharge him from liability thereon, and so long as he remains undischarged, the defense of fraud is open, both to him and the bank. But where certification is made at the request of the holder, the effect is different, and discharges the drawer from further liability on the check, and substitutes a new contract between the holder and the bank, by which the money called for by the check is transferred from the account of the drawer to the account of the holder; so that, in contemplation of law, the obligation of the bank to the holder, in such case is, the same as if the funds had been actually paid out by the bank to him, by him redeposited to his own credit and a certificate of deposit issued to him therefor." The obligation of an acceptor is to pay the instrument according to the tenor of his acceptance: Negotiable Instruments Law, section 62. It has been said that an acceptor admits everything essential to the validity of the bill and on this ground he cannot, for example, even set up the defense of want of consideration between the parties. See Joyce, Defenses to Ne-

gotiable Paper, vol. 1, sec. 341. The acceptor cannot defend on the ground of want of consideration between the drawer and the payee: Vanstrum v. Liljengren, 37 Minn. 191, 33 N. W. Repr. 555; Spurgin v. McPheeters, 42 Indiana 527; Welch v. Mayer, 4 Colo. App. 440, 36 Pacific Repr. 613; Davidson v. Keyes, 2 Robinson (La.) 254, 38 Amer. Dec. 209; Debuys v. Johnson, 4 Martin's La. R. (N. S.) 286; Smith v. Adams & Co., 14 La. Ann. R. 409. In 8 Corpus Juris, p. 747, section 1018, the rule is thus stated: "So, in an action by the payee against the acceptor or the drawer, failure of consideration as between the drawer and the drawee is not a defense."

The business of the country could not be carried on unless those transacting it may rely upon such undertakings by financial institutions as the one with which we are dealing. The court below should have disposed of the case as a matter of law by giving binding instructions in plaintiff's favor.

The assignments of error are all overruled and the judgment is affirmed.