P. DEAN, Appellant, v. IOWA-DES MOINES NATIONAL BANK AND TRUST COMPANY, Appellee and Cross-Appellant.

No. 44217.

1240

OCTOBER 18, 1938.

SUPPLEMENTAL OPINION ON REHEARING MARCH 12, 1940.

Strock, Sloan & Dyer and Strock, Woods & Dyer, for appellant.

McMartin, Herrick & Langdon, for appellee and cross-appellant.

RICHARDS, J. (original opinion)

MITCHELL, J. (supplemental opinion on rehearing)—In this law action commenced on August 31, 1937, plaintiff in separate counts declared upon four different written instruments, on each of which the Iowa National Bank was a party. To that

bank the defendant bank is the successor, and the liability of defendant on these instruments is whatever would be the liability of the Iowa National Bank, according to the allegations in each count. This opinion takes into consideration these allegations, without further mentioning. Also, we will refer to the Negotiable Instruments Law as the N. I. L.

In count 1 plaintiff alleged that on April 1, 1918, the Iowa National Bank, for a valuable consideration, issued to L. Harbach and Sons, as payee, a draft drawn on Corn Exchange National Bank, Chicago, Illinois, in the following words:

> "Iowa National Bank 33-2
> "Des Moines, Iowa, April 1, 1918
> "No. 534554
> "Pay to the Order of L. Harbach and Sons $52.92 Fifty-two and 92/100 Dollars Corn Exchange National Bank, Chicago, Ill.
> "J. Burson, Cashier."

Further matters set out in this count were: negotiation of the draft for valuable consideration by the payee to plaintiff on August 10, 1937; presentment to drawee bank for payment on August 11, 1937; refusal of payment by drawee; due protesting and giving of notice of protest and dishonor to defendant as drawer, all on August 11, 1937, following dishonor; demand on defendant for payment on August 13, 1937; payment refused by defendant. A further allegation was that defendant has suffered no loss by virtue of any delay in presentment of said draft for payment. Plaintiff demanded judgment upon count 1 for $52.92 with interest from August 11, 1937.

Defendant demurred on the ground that count 1 shows that the cause of action is barred by section 11007(6), Code 1935, for the reason that, before the action was begun, more than 10 years elapsed from and after a reasonable time for presentment of the draft to the drawee for payment, and likewise more than 10 years elapsed from and after a reasonable time for presentation of the draft to defendant; that plaintiff's cause of action on said draft accrued more than 10 years prior to the commencement of this action. This demurrer the trial court sustained. Plaintiff electing to not amend or plead over, judgment was rendered against him upon count 1. Hav-

ing appealed, he assigns the ruling on the demurrer as the error relied on for reversal on count 1.

The statute of limitations on which alone the demurrer is predicated, is in these words:

"11007. Period of. Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared: * * *

"6. Written contracts—* * * Those founded on written contracts, * * * within ten years."

 It must be conceded that it is the general rule, that the plaintiff's cause of action has not accrued so as to start the statute of limitations running, unless all the facts exist so that plaintiff can allege a complete cause of action, but there is an exception controlling in the case at bar. Namely, if the only act necessary to perfect the plaintiff's cause of action is one to be performed by the plaintiff and he is under no restraint or disability in the performance of such act, he cannot indefinitely suspend the statute of limitations by delaying performance of that act.

Let us look at a few of our own decisions. Early in the history of this court in the case of Prescott v. Gonser, 34 Iowa 175, 179, this court said:

"That the action of mandamus cannot be maintained until there has been a refusal to perform the official duty is true, but to hold that a plaintiff who has a right to demand performance at any time may delay such demand indefinitely, would enable him to defeat the object and purpose of the statute. It is certainly not the policy of the law to permit a party, against whom the statute runs, to defeat its operation, by neglecting to do an act which devolves upon him, in order to perfect his remedy against another. If this were so, a party would have it in his own power to defeat the purpose of the statute in all cases of this character. He could neglect to claim that to which he is entitled, for even fifty years unaffected by the statute of limitations, thereby rendering it a dead letter. In such a construction of the statute we cannot concur. * * *

"To allow him to suspend the operation of the statute of limitations by his own neglect to make demand, would be to permit him to take advantage of his own wrong."

In the case of Baker v. Johnson County, 33 Iowa 151, the plaintiff had an unliquidated claim against the county. The defendant's existing duty was to pay the claim after demand. Plaintiff's preliminary duty was to make the demand. The demand was not made until the statute had run. This court held that the statute of limitations was a good defense.

In the case of Great Western Telegraph Company v. Purdy, 83 Iowa 430, 432, 50 N. W. 45, 46, stock subscriptions were to be paid "as the directors of the corporation should order". The court said:

"It may be assumed that this balance did not become due, and no action to recover could be maintained until such an order had been made. It rested with the corporation, * * * to acquire the right to maintain an action. * * * Surely the law will not permit a party, by his own inaction, to defeat the statute of limitations. * * * In our opinion, the action of the plaintiff is barred by the statute of limitations."

The plain language of the Purdy case makes it clear that it is not based on an existing duty, but is founded upon the proposition that a creditor may not, by his own neglect or inaction, postpone the running of the statute. In the rather recent case of Lovrien v. Oestrich, 214 Iowa 298, 299, 242 N. W. 57, opinion by the late Justice Morling, this court said:

"It was wholly within the power of the holder of the note to make demand and thereby determine the time of maturity. It was, therefore, incumbent upon him to make demand within reasonable time, and in such case demand must be made within the time prescribed by the statute of limitations for commencing suit. A creditor may not by his own act or neglect delay or postpone the running of the statute. The holder might have made demand on the date of the note, December 1, 1916, and thereby matured his cause of action in 30 days thereafter. The statute of limitations began to run at the end of 30 days from the date of the note and action upon it was barred in 10 years thereafter, within the principle of Great Western Telegraph Co. v. Purdy, 83 Iowa 430, 433 [50 N. W. 45]; Hodgeon v. Keppel, 211 Iowa 795 [232 N. W. 725]; Citizens Bank v. Taylor, 201 Iowa 499 [207 N. W. 570]; Prescott v. Gonser, 34 Iowa 175, 179; Wilson v. Stipp, 194 Iowa 346, 350 [189 N. W. 665]."

The general rule in this country is stated in 37 C. J. 933, as follows:

"Where plaintiff's right of action depends upon some act to be performed by him preliminary to commencing suit, and he is under no restraint or disability in the performance of such act, he cannot suspend indefinitely the running of the statute of limitations by delaying the performance of the preliminary act; for it is not the policy of the law to put it within the power of a party to toll the statute of limitations; if the time for such performance is not definitely fixed, a reasonable time, but that only, will be allowed therefor, unless this would be contrary to the evident intention of the party creating the condition. The rule that, where the right of action depends upon a preliminary step to be taken by plaintiff, he cannot indefinitely delay the taking thereof, rests upon the principle that plaintiff has it in his power at all times to do the act which fixes his right of action."

The Nebraska court was confronted with the same question that is involved in the present case, Wrigley v. Farmers and Merchants State Bank, 76 Neb. 862, 108 N. W. 132. We quote:

"The trial court found that the action was barred by the statute of limitations and the correctness of that conclusion is challenged, the contention of the appellant being that the cause of action against the appellee did not accrue until the draft was presented for payment in November, 1899. Counsel for appellant has presented an interesting discussion of the distinction between a draft drawn by one bank on another and a bank check drawn by a customer. We are inclined, however, to adopt the view of counsel for appellee, that the distinction is not important to the inquiry. In Scroggin v. McClelland, 37 Neb. 644 [56 N. W. 208, 22 L. R. A. 110, 40 Am. St. Rep. 520], it was held that the statute of limitations commences to run in favor of the drawer of a check at the latest after the lapse of a reasonable time for the presentment of the check. We see no reason for adopting a different rule in favor of the holder of a bank draft. * * * The reason for the rule is that it was the right of the creditor by his own act to make the demand payable. He might by such act, have perfected his cause of action, and it would be both unjust and unreasonable to hold

that he could postpone indefinitely the time for enforcing his claim."

In the case of Colwell v. Colwell, 92 Or. 103, 179 P. 916, 4 A. L. R. 876, the Oregon court said:

"Before an action can be maintained against a drawer upon a check, demand for its payment must be made upon the drawee bank. Such demand, however, cannot be deferred indefinitely. That a demand necessary to support a cause of action must be made within the statute of limitations is taught in the cases here noted: Morrison v. Mullin, 34 Pa. 12; Clements v. Lee, 8 Tex. 374; Thompson v. Whitaker Iron Co., 41 W. Va. 574, 23 S. E. 795; Codman v. Rogers, 10 Pick (Mass.) 112; Palmer v. Palmer, 36 Mich. 487, 24 Am. Rep. 605; Meherin v. San Francisco Produce Exch., 117 Cal. 215, 48 Pac. 1074; First Nat. Bank v. King, 60 Kan. 733, 57 Pac. 952; Sheaf v. Dodge, 161 Ind. 270, 68 N. E. 292; Hitchcock v. Cosper, 164 Ind. 633, 73 N. E. 264;; Grotefend v. May, 33 Cal. App. 321, 165 Pac. 27; Caner v. Owners' Realty Co., 33 Cal. App. 479, 165 Pac. 727; Purcell Bank & Trust Co. v. Byars, 66 Okla. 70, 167 Pac. 216; Douglas County v. Grant County, 98 Wash. 355, 167 Pac. 928."

In a very interesting note following the Colwell case in 4 A. L. R., page 881, the annotator says:

"The holding in the reported case (Colwell v. Colwell, ante, 876), that the Statute of Limitations begins to run in favor of the drawer of a check, so as to bar a suit thereon against him, at the time the check should be presented for payment, which is a reasonable time after delivery of the check, is not opposed by any of the cases in which the question has been directly decided, assuming that presentation was not in law excused, in which case the date of execution and delivery is taken."

In regard to many of the cases relied on in the original opinion in this case the same annotator in 4 A. L. R. on page 884 says:

"It has been said by way of argument or as dictum, that the Statute of Limitations begins to run in favor of the drawer

of a check to bar an action thereon when the check has been presented to the drawer and payment has been refused. Merchants' Nat. Bank v. State Nat. Bank (1871) 10 Wall. (U. S.) 676, 19 L. Ed. 1028 (dictum); Bull v. First Nat. Bank (1887) 123 U. S. 105, 31 L. Ed. 97, 8 Sup. Ct. Rep. 62 (dictum); Haynes v. Wesley (1900) 112 Ga. 668, 81 Am. St. Rep. 72, 37 S. E. 990 (see explanation of this case, infra); Wright v. Mac-Carty (1900) 92 Ill. App. 120 (dictum); First Nat. Bank v. Needham (1870) 29 Iowa, 249 (statement made arguendo); Cowing v. Altman (1877) 71 N. Y. 435, 27 Am. Rep. 70 (obiter); Re Boyse (1886) L. R. 33 Ch. Div. (Eng.) 612, 56 L. J. Ch. N. S. 135, 55 L. T. N. S. 391, 35 Week. Rep. 247 (a bill of exchange)."

█ So in the case at bar, when the appellee bank issued its draft, its agreement or undertaking was complete. It agreed to pay the draft if it was not paid upon due presentation. The only parties to this agreement were the bank, as the drawer of the draft, and the payee or holder of that draft. The drawee was not a party to this contract, and not liable upon the draft, unless and until it accepted same, which in this case it never did.

The sole and only person that could make due presentation was the appellant. It was wholly within his power. The drawer had done every act it ever could or would do to render itself liable. Its undertaking was complete. The undisputed evidence here is that no demand or presentment was made for more than 19 years.

The statute of limitation began to run after a reasonable time for presentment for the reason given in the cases cited, namely, that "a creditor may not, by his own act or neglect, delay or postpone the running of the statute."

So in the case at bar the failure to present the draft within a reasonable time was due to the failure of the appellant to present same. The lower court was right in sustaining the demurrer to count 1 and it necessarily follows that its judgment is affirmed.

█ In count 2 plaintiff declared upon a cashier's check made and delivered on October 13, 1920, by the Iowa National Bank to C. E. Brenton, as payee, in the following words:

"Iowa National Bank 33-2
"Des Moines, Iowa, Nov. 13, 1920; No. 38441.
"Pay to the Order of C. E. Brenton $168.09 One Hundred
Sixty-eight and 09/100 Dollars Cashier's Check.
"J. Burson, Cashier."

Additional matters alleged were: negotiation of the instrument by the payee to plaintiff on August 10, 1937; plaintiff's indorsement and presentation to defendant for payment on August 11, 1937; refusal of payment by defendant; that defendant has not sustained any loss by virtue of any delay in presentment of the instrument for payment. Plaintiff demanded judgment for $168.09 with interest from August 11, 1937.

Defendant demurred on the ground that count 2 shows that the cause of action was barred by section 11007 (6), Code 1935, quoted supra, by reason of more than 10 years having elapsed after the issuance of the instrument by defendant; that plaintiff's cause of action accrued more than 10 years prior to the commencement of this action. The demurrer was sustained. Plaintiff electing to not amend or plead over, judgment was rendered against him, from which he appealed.

Assigning as error the sustaining of the demurrer, plaintiff states two reasons for his contention, (1) the statute of limitations did not commence to run until actual presentment for payment on August 11, 1937, and (2) plaintiff presented the cashier's check for payment within a reasonable time after its last negotiation and this all within the period of the statute of limitations.

We will look upon the cashier's check as a bill of exchange rather than a promissory note, adopting appellant's claim that under section 9591, Code 1935 (Sec. 130, N. I. L.), he rightfully so elected in the court below. So treating the instrument, appellant concedes that defendant is primarily liable thereon and that Code sections 9521 and 9544 need not be considered. That is, defendant was primarily liable on the instrument. Its liability was created from and after issuance of the instrument. At all times after the issuance defendant owed the debt, and there was a duty to pay. So far as the statute of limitations is concerned a cause of action had accrued. If there was any necessity to demand payment before suit, the nature of the instrument was such that the making of such demand may not

be looked upon as something without which a cause of action did not exist previously to the demand. Nor does the instrument on its face appear to indicate that the parties intended that it have the characteristics of a certificate of deposit, nor was the amount of the liability uncertain, to be determined within a set limit by the creditor and to be made certain only by a request or demand by the creditor, as in Allen v. Allen, 116 Iowa 697, 88 N. W. 1091, nor are there any express provisions respecting demand, nor is this a case in which action is brought for an alleged breach by a bailee or a trustee, nor has anything been called to our attention that makes it appear that a demand for payment by defendant would have been more than a preliminary step to the enforcement of the remedy for the breach of an existing duty on part of defendant, within the purview of Prescott v. Gonser, 34 Iowa 175, and other cited cases already discussed. Appellant's first-stated reason that there was error must fail.

█ To sustain reason (2) found in appellant's assignment of error reliance is upon section 9531, Code of 1935 (Sec. 71, N. I. L.), which reads:

"Where the instrument is not payable on demand, presentment must be made on the day it falls due. Where it is payable on demand, presentment must be made within a reasonable time after its issue, *except that in the case of a bill of exchange, presentment for payment will be sufficient if made within a reasonable time after the last negotiation thereof.*"

We have italicized the portion from which appellant would draw the conclusion that presentment to defendant for payment was made in proper time, because made within a reasonable time after the last negotiation of the instrument. This section has no relevance here. Its provisions have to do with what is a sufficient time in which to make presentment in situations in which presentment is necessary to charge parties secondarily liable on a negotiable instrument. The statute does not touch upon what is a reasonable time in a situation where presentment is no more than a step preliminary to the enforcement of the remedy against a party primarily liable. The demurrer to count 2 was properly sustained.

█ In count 3 plaintiff alleged that on November 1, 1905, the Iowa National Bank, in consideration of the deposit of the

sum of $3.75 by P. H. Martin, issued to him a certificate of deposit, payable to his order, same being in the following words:

"IOWA NATIONAL BANK

"No. 43483.

"Des Moines, Iowa, November 1, 1905 $3.75

"P. H. Martin has deposited in this Bank Three Dollars and Seventy-five Cents. Payable to the order of Self. On the Return of this Certificate Properly Endorsed.

"R. L. Chase, Jr.,

"Assistant Cashier."

Further matters alleged were: negotiation of the instrument by the payee to plaintiff on August 27, 1937; indorsement, and presentment of the instrument by plaintiff to defendant for payment on August 28, 1937; refusal of payment by defendant; that defendant has not sustained any loss by virtue of any delay in the presentment of the certificate for payment. Judgment was demanded for $3.75 with interest from August 27, 1937.

Defendant demurred on the ground that count 3 shows that the cause of action is barred by section 11007 (6), 1935 Code, quoted supra, for the reason the certificate of deposit is payable on demand and the cause of action accrued thereon on November 1, 1905, after which date more than 10 years elapsed prior to the commencement of this action. The demurrer was overruled and defendant electing to stand on the ruling judgment was rendered against it and it has appealed.

On its cross appeal the appellee assigns as error the overruling of this demurrer, contending that a cause of action accrued on the date of issuance of the certificate of deposit, and consequently action thereon was barred in 10 years thereafter.

The question has already been repeatedly before this court. In Mereness v. First National Bank, 112 Iowa 11, 83 N. W. 711, 51 L. R. A. 410, 84 Am. St. Rep. 318, the action was brought in 1895 upon a demand certificate of deposit issued in 1881. The lower court sustained a demurrer that was based on the statute of limitations. There was an affirmance in this court, planted on the grounds that when a person deposits money in a bank in the usual course of business, he loans it to the bank, which becomes his debtor and not his bailee thereof,

Lowry v. Polk County, 51 Iowa 50, 49 N. W. 1049, 33 Am. Rep. 114; Long v. Emsley, 57 Iowa 11, 10 N. W. 280, and on the further ground that an ordinary certificate of deposit is nothing more nor less than a promissory note, to be governed, with certain exceptions, by the rules governing such notes. The Mereness case was decided in 1900. In 1905 the question was again before this court in Elliott v. Capital City State Bank, 128 Iowa 275, 103 N. W. 777, 1 L.R. A., N. S., 1130, 111 Am. St. Rep. 198. On this occasion the court reconsidered the question, including the prior pronouncements of the court, and said [page 276]:

"The conclusion in the Mereness case having been predicated on false premises, it follows that it must fall with its foundation, unless there be some other sufficient reason for holding that a demand certificate of deposit should be treated as a demand promissory note, so far as the statute of limitations is involved. We do not believe that any sound reason for so holding exists."

The opinion then points out the distinctions between a promissory note and a deposit in a bank, and after a thorough analyzing of the nature and import of a certificate of deposit, this conclusion was reached:

"That a certificate of deposit is distinguishable from a demand promissory note, we think clear. [Citing authorities.] And that it is not due and payable until actual demand is made, we think is held by the overwhelming weight of authority. [Citing authorities.]"

The opinion also declares that there is no merit in the contention that, if an actual demand is necessary to mature the certificate, such demand must be made within the period of the statute of limitations. The pronouncement following the exhaustive consideration of the question in the Elliott case has been the law in this jurisdiction since 1905. The N. I. L. was statutory law in Iowa when the Elliott case was decided. In Anderson v. First National Bank, 144 Iowa 251, 122 N. W. 918, 138 Am. St. Rep. 288, and in Thompson v. Farmers State Bank, 159 Iowa 662, 140 N. W. 877, 44 L. R. A., N. S., 550, the holding in the Elliott case has been subsequently recognized. Appellee urges that we now hold that the conclusion reached was

erroneous, because, says appellee, "The reason underlying the Elliott case was wiped out by the enactment of the above statute," i. e., section 9530, Code 1935 (Sec.. 70, N. I. L.). The particular portion of this statute that appellee says accomplished the "wiping out" reads: "Presentment for payment is not necessary in order to charge the person primarily on the instrument * * *." Appellee argues its point after this manner: First premise: Under this statute presentment for payment is not necessary *to charge a party* primarily on the instrument. Second premise: Under this statute presentment for payment is not necessary *in order to bring suit against a party* primarily on the instrument. Conclusion: Therefore action could have been brought immediately after the issuance of the certificate. The second premise is but a repetition of the first, with the words "in order to bring suit against a party" substituted for the words "to charge a party." This substituting puts words into the statute that do not there appear. It might look like begging the question. Of course it is not so intended, as appellee recognizes the necessity of bridging the gap between the two premises. In its attempt so to do reliance is primarily on what has been said by several renowned text writers. What they say appears to be this—section 70, N. I. L. (code section 9530), changed the prior established law, the alleged change being—that by reason of section 70, N. I. L., the statutes of limitations begin to run immediately upon all negotiable instruments payable on demand, in favor of parties primarily liable. Several of these text writers say the section was intended to have application to the maker of a promissory note and the acceptor of a bill. But in favor of such parties it was already accepted law in this and many other jurisdictions that the statutes of limitations begin to run from the delivery of the note or the acceptance. In such jurisdictions any ancient rules of the law merchant there may have been requiring presentment of negotiable instruments had already been nullified with respect to makers and acceptors. But despite the mentioned intention, these text writers go further, and assert that because of section 70, N. I. L., of logical necessity it must be said with respect to *all* negotiable instruments payable on demand, that the statutes of limitations begin to run immediately in favor of parties primarily liable thereon. They say the law was changed, and that because

changed it causes to start the immediate running of the statutes of limitations on certificates of deposit and certified checks, and likewise outlaws bank notes after they have circulated as money for more than 10 years.

Dwelling briefly on the question whether by reason of section 70, N. I. L., there is the logical necessity for the conclusion mentioned, it is well to read the act as a whole and to read section 70, N. I. L., as the mere part of the act that it is. If this be done, the quoted portion of section 9530 has the appearance of a statement introductive of a particular subject found in the law merchant, i. e., presentment. To this subject are devoted section 9530 and the 19 sections of the act immediately following. The quoted portion introduces this subject with the statement that presentment is not necessary to charge parties primarily on the instrument. The statement serves a fit purpose —it clarifies the intricate provisions of these 20 sections, and does so by indicating at the outset that the rules for presentment as set out in these sections have no application to parties primarily on the instrument. In this sense the quoted portion of the section, viewed in perspective, takes on the characteristics of a negative statement, or at least of one pointing out the exclusion of a certain class of parties from any application as to them of the provisions that follow. It would seem that the legislature may have used the quoted words with no other thought or intendment. If so there would appear to be slight necessity for looking upon the quoted words as changing the law, and in that connection no new or changed law was needed in this jurisdiction in order to exclude makers, acceptors and issuers of certificates of deposit from the provisions relative to presentation. The then existing law made presentment unnecessary to charge them on the instrument. No change in that respect appears to have been effected by section 70, N. I. L. While code section 9653 (section 192, N. I. L.) is said to be an innovation in that it provides that the person primarily liable is the person who *by the terms of the instrument* is absolutely required to pay the same, the result does not affect the prior status of makers, acceptors or issuers of certificates of deposit, in this jurisdiction. Of the possibility that the legislative meaning was that the excluding was merely the result of the then law as it existed in many jurisdictions including Iowa, no dis-

cussion by the text writers, on whom appellee relies, has been called to our attention. What they say is that this section was intended to have application to the maker of a promissory note or the acceptor of a bill. In what manner the section would have application to the maker or acceptor is not expressly detailed, but evidently the thought is that the application of the section was to make the note or the acceptance due and payable without presentment for payment. If this, as it seems to be, is the foundation for the theory that section 70, N. I. L., was an enactment of new law, or changed the old law, its applicability in Iowa and like jurisdictions becomes more or less questionable. For in these jurisdictions there was nothing to change, as it had already long been the established law that the liability of the maker and the acceptor is immediate, the cause of action at once accruing, and a sufficient reason therefor appeared in the fact that the contract of the maker is to seek the creditor and pay him. In the Elliott case, supra, we said:

"A promissory note ordinarily represents a loan or its equivalent, and it is generally the duty of the debtor to seek the creditor and pay him, and it was for the protection of the debtor that demand notes were originally held to be due at once."

A like rule had been applied to the acceptor of a bill. It is hardly plausible that the legislature enacted new law, that in no way affected the status or rights of the parties, for the purpose merely of furnishing a new reason or argument why the law was as it was. It is common knowledge that the original discussion of section 70, N. I. L., was under unusual circumstances. Severe criticism of the N. I. L. followed, after it had been formulated by a group of eminent lawyers and instructors. There is extant a short treatise, written by the then probably most outstanding American student of commercial law, in which he pointed out what he deemed such defects in the N. I. L., as a codification of the law merchant, that in his opinion the fact it had been enacted by the legislatures of a few states was an unfortunate one, and its general adoption would be a calamity. The writers of the N. I. L. came to the rescue of their creation, the matter became highly controversial, the famous Ames-Brewster debates ensued. The particular proposition on which appellee relies afforded ammunition for those criticizing. Possibly

it is worthy of reconsideration in a less controversial spirit. As it was, the text writers were not unanimous.

From appellee's theory there can be adopted this much, i. e., so far as the bank being already *charged* without presentment was concerned, there was no impediment to immediate commencement of suit. But if there were other impediments to immediate suit, unassociated with the question whether defendant was already charged, it seems obvious that their removal could be accomplished in but one way, i. e., by meeting the requirements that made them impediments. In a certificate of deposit there is such an impediment. It lies in the fact that there is imputed to the parties an agreement that *actual* demand is necessary to mature the debt created by a bank deposit. We again quote from the Elliott case, supra:

"Deposits are made in a bank in accordance with the universal commercial usage, which becomes a part of the law of the transaction. They are neither loans, nor bailments in the strict sense of the term. A deposit is a transaction peculiar to the banking business, and one that the courts should recognize and deal with according to commercial usage and understanding. The primary purpose of a general deposit is to protect the fund, * * *. The transaction is in reality for the benefit and convenience of the depositor, and while the relation of debtor and creditor exists, and the bank has the use of the money for commercial gain, *it assumes no further obligation* than to pay the amount received *when it shall be demanded* at its banking house. Girard Bank v. Bank of Penn Township, 39 Pa. 92 (80 Am. Dec. 507). * * * But unless the banker desires to return the deposit, he is under no obligation to seek his creditor for the purpose of making payment. If no *actual* demand be necessary to mature the debt created by a deposit, then the depositors may sue at once upon leaving the bank, and a transaction intended to be for the mutual benefit of both may become one of oppression and wrong to the bank, and this the law should not tolerate. * * * And that it [certificate of deposit] is not due and payable until actual demand is made, we think is held by the overwhelming weight of authority. * * * We think there is no merit in the appellee's contention that, if an actual demand is necessary to mature the certificate, such demand must be

made within the period of the statute of limitations. The parties may contract as they will.'' (Italics supplied.)

A depositor must make actual demand before he may sue the bank for the deposit. Should he ignore this impediment to bringing suit immediately after issuance of the certificate, by bringing suit immediately without making demand, and should the bank make defense that an actual demand necessary to mature the debt had not been made, the requirement that created such impediment to immediate suit would not be met by replying that the bank was already *charged* on the instrument without necessity of presentment. It is true the bank would be *charged* on the instrument from its inception, in the sense that a failure to present it for payment within a reasonable time would not discharge the bank, as in the case of a party secondarily liable. To accomplish *that* end presentment was not necessary. But the fact of nonnecessity to that end carries with it no implication of nonnecessity of presentment for an entirely different and essential thing, i. e., making the debt due by demand before the suit could be brought. Saying the bank was at all times *charged*, would not be meeting the requirement that made necessity of actual demand an impediment to the bringing of immediate suit. It would not remove the impediment. While the impediment remained the right to sue was not immediate. Our conclusion is that the holding in Elliott v. Capital City State Bank, 128 Iowa 275, 103 N. W. 777, 1 L. R. A., N. S., 1130, 111 Am. St. Rep. 198, is not nullified by any sound deduction to be drawn from code section 9530, section 70, N. I. L. That holding is controlling in the case at bar. The demurrer was properly overruled.

In count 4 plaintiff alleged that on May 5, 1919, A. G. Spaulding & Co., a depositor in Iowa National Bank, issued its check upon said bank for $11.48 payable to the order of the City of Des Moines, Iowa, in the following words:

"No...........

"Des Moines, Iowa, May 5th, 1919.

"Pay to the order of City of Des Moines Ia.......$11.48 ......Eleven & 48/100......Dollars. To Iowa National Bank

"A. G. Spaulding & Co.

"By D. Y. French."

Further allegations were: that on the same day the payee in said check presented same to said bank with request that the check be certified and that thereupon on said date said bank did certify the check and noted its certification thereon in the following words:

"Des Moines, Iowa. 33-2
"Date May 5, 1919 $11.48
 "Certified
 "No. 1282-

"Payable according to the original tenor of the instrument as drawn by the maker and when properly endorsed.

"Iowa National Bank
"Des Moines, Iowa.
"F. C. Davis, Teller."

Further matters alleged were: negotiation of the instrument by the payee to plaintiff on August 19, 1937; indorsement, and presentation of the instrument by plaintiff to defendant for payment on August 20, 1937; refusal of payment by defendant; also that plaintiff has not sustained any loss by virtue of any delay in presentment of the foregoing certified check for payment. Judgment was demanded for $11.48 with interest from August 20, 1937.

Defendant demurred on the ground that count 4 shows that the cause of action is barred by section 11007 (6), 1935 Code of Iowa, quoted supra, for the reason that more than 10 years elapsed after the certification of said check by defendant and before commencement of this action; that plaintiff's cause of action accrued more than 10 years before the commencement of this action. This demurrer the trial court sustained. Plaintiff electing not to amend or plead over judgment was rendered against him on count 4. On this appeal he assigns the sustaining of the demurrer as the error relied on for reversal.

It is our opinion that the demurrer should have been overruled. The reason is that upon its being certified at the request of the holder the check became in legal effect an ordinary demand certificate of deposit, and the rule in the Elliott case, supra, controls with respect to the statute of limitations. In this case the certifying was done by the bank at the request of the holder of the check. Such a transaction is practically this:

" 'The bank virtually says that the check is good; we have the money * * * here ready to pay it. We will pay it now, if you will receive it. The holder says, no, I will not take the money; you may certify the check and retain the money for me until the check is presented.' " Carnegie Trust Co. v. First Nat. Bank of New York, 213 N. Y. 301, 107 N. E. 693, 695, L. R. A. 1916C, 186.

"The effect of the bank's certifying a check at the request of a *holder* is to create a new obligation on the part of the bank to that holder, the amount of the check passes to the credit of the holder, who is thereafter a depositor in that amount: Negotiable Instruments Act, section 188; Central Guarantee Trust and S. D. Co. v. White, 206 Pa. 611, 56 A. 76; Girard Bank v. Bank of Penn Twp., 39 Pa. 92, 80 Am. Dec. 507." Bulliet v. Allegheny Trust Co., 284 Pa. 561, 131 A. 471, 474, 42 A. L. R. 1133.

In Citizens Nat. Bank v. First Nat. Bank, 66 Colo. 426, 182 P. 12, 5 A. L. R. 587, it was held that it seems clear from the authorities that a certified check is not due until presentation for payment, with citations from numerous jurisdictions. Several text writers express the same conclusion. See Michie on banks and Banking, Vol. V, page 464, and cases cited; Daniel on Negotiable Instruments, Seventh Edition, Vol. III, section 1791, pages 1834 and 1835, and Morse on Banks and Banking, Sixth Edition, Vol. I, pages 920 and 921. In Wright v. Mac-Carty, 92 Ill. App. 120, the court said, "in legal contemplation and effect the certified check is a certificate of deposit and the bank owes the amount called for by such a check to the legal holder, payable on demand." The demurrer to count 4 should have been overruled.—Reversed on plaintiff's appeal from the judgment entered on count 4, affirmed on plaintiff's appeal from the judgment entered on counts 1 and 2; affirmed on defendant's appeal from the judgment entered on count 3.

SAGER, C. J., and STIGER, KINTZINGER, HAMILTON, and DONEGAN, JJ., concur in original opinion.

MITCHELL, ANDERSON, and MILLER [ERNEST M.], JJ., dissent to original opinion.

STIGER, MILLER [FREDERIC M.], HALE, and BLISS, JJ., concur in supplemental opinion.

RICHARDS, J., HAMILTON, C. J., and SAGER and OLIVER, JJ., dissent to supplemental opinion.

MITCHELL, J. (dissenting to original opinion)—I find myself unable to agree with count 1 of the majority opinion, and therefore respectfully dissent.

My difficulty grows out of the fact that I cannot see the difference between a draft and a check. A draft is a check drawn by one bank on another, while a check is an instrument drawn by an individual on a bank. If there is no difference between these instruments, then, in my humble judgment, the argument of the majority in regard to the statute of limitations would not apply.

Let us see what the appellant claims. In his very able argument he concedes:

"While it is true that our court has often said in effect that drafts are banker's checks and that a draft and a check may be considered for practical purposes to be the same, it is also true that they are not always the same in all respects."

The Nebraska court in the case of Wrigley v. Farmers and Merchants State Bank, 76 Nebraska 862, 108 N. W. 132, was confronted with a case very similar to the one at bar, and that court said, 108 N. W. at pages 132, 133:

"The trial court found that the action was barred by the statute of limitations and the correctness of that conclusion is challenged, the contention of the appellant being that the cause of action against the appellee did not accrue until the draft was presented for payment in November, 1899. Counsel for appellant has presented an interesting discussion of the distinction between a draft drawn by one bank on another and a bank check drawn by a customer. We are inclined, however, to adopt the view of counsel for appellee, that the distinction is not important to the inquiry. In Scroggin v. McClelland, 37 Neb. 644 [56 N. W. 208, 22 L. R. A. 110, 40 Am. St. Rep. 520], it was held that the statute of limitations commences to run in favor of the drawer of a check at the latest after the lapse of a reasonable time for the presentment of the check. We see no reason for adopting a different rule in favor of the holder of a bank draft. * * *

"The reason for the rule is that it was the right of the creditor by his own act to make the demand payable. He might, by such act, have perfected his cause of action, and it would be both unjust and unreasonable to hold that he could postpone indefinitely the time for enforcing his claim."

The Pennsylvania court in the case of Bernstein v. Bryn Mawr Trust Co., 318 Pa. 42, 177 A. 803, said:

"The check was drawn by defendant on the Bryn Mawr National Bank in which the former had a deposit. * * * To circumvent the statute, it is contended the drawing of the check constituted plaintiff one of defendant's depositors, and, as such, the statute would not begin to run before demand. The check in question was of the ordinary character one banking institution draws upon another. It would be remarkable, if this, without more, should constitute the indorsee of such an instrument a depositor in the drawing bank. The discussion to be found in Metropolitan Life Insurance Company's Appeal, 310 Pa. 17, 164 A. 715, 86 A. L. R. 1301, is conclusive against plaintiff's contention." 177 A. page 804.

Let us turn now to what the Iowa court has said in regard to this. In the very recent case of Leach v. Mechanics Savings Bank, 202 Iowa 899, at page 904, 211 N. W. 506, at page 508, 50 A. L. R. 388, this court said:

"The terms 'draft' and 'check' are used interchangeably, and courts have uniformly held that drafts are checks, within the ordinary meaning of that term. The only distinguishing feature between the two is that in a draft the drawer is a bank, while in the ordinary check the drawer is an individual."

The legislature of Iowa said, in enacting code section 9646:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."

Thus, it seems to me, the courts, including the Iowa court, have held that you cannot distinguish a draft from an ordinary check drawn by a private individual. Both differ from an ordinary bill of exchange in that the latter is drawn to be accepted

and further negotiated until it becomes due, while a draft or check is an order to pay and usually is presented for payment.

In the case of Colwell v. Colwell, 92 Or. 103, 179 P. 916, 4 A. L. R. 876, the Oregon court said:

"A check is an instrument designed for use presently, and not for a permanent investment. If A owes B a sum of money, the latter must commence his action within six years; but, if A gives his check to B, this does not alter the circumstances in that respect beyond the requirement that the holder of the check must present it within a reasonable time. The statute declares that, except upon a judgment or a sealed instrument, an action must be commenced within six years upon 'a contract or liability express or implied.' L. D. L., §6.

"This provision is for the benefit of the drawer as well as of any other party to a check. The instrument is one upon which a possible action may be founded. If the holder would avail himself of the benefit of the contract embodied in it, or if he would enforce his remedy upon it, he is bound to act within the period allowed by law. An act necessary in this behalf is a presentment of the check to the bank upon which it was drawn. The law says this must be done in a reasonable time. * * *

"When, therefore, as appears on the face of the complaint before us, the check was delivered and accepted in the city where the drawee bank is situated, the reasonable time expired at the close of the next business day, as stated in Matlock v. Scheuerman, 17 L. R. A. (N. S.), 747, and note (51 Or., 49; 93 Pac., 823). If beyond that the holder delays presentment for six years, the statute of limitations, considered as one of repose, stills any effort to enforce the liability of the drawer. The holder cannot thus keep the check indefinitely as a menace to the drawer in defiance of the law requiring presentation within a reasonable time and thus extend the statute of limitations ad libitum. Consequently presentment is mandatory, and cannot be dispensed with, so that, if more than six years have been allowed to lapse where all parties, including the drawee, are in the same city, no action can be maintained upon a presentment made after that time." 179 P. page 916, 4 A. L. R. pages 878, 880.

The Iowa court in the very recent case of Lovrien v. Oestrich, 214 Iowa 298, 242 N. W. 57, which involved an action upon

a promissory note, payable thirty days after demand, said at page 299:

"It was wholly within the power of the holder of the note to make demand and thereby determine the time of maturity. It was, therefore, incumbent upon him to make demand within reasonable time, and in such case demand must be made within the time prescribed by the statute of limitations for commencing suit. A creditor may not by his own act or neglect delay or postpone the running of the statute. The holder might have made demand on the date of the note, December 1, 1916, and thereby matured his cause of action in 30 days thereafter. The statute of limitations began to run at the end of 30 days from the date of the note and action upon it was barred in 10 years thereafter, within the principle of Great Western Telegraph Co. v. Purdy, 83 Iowa 430, 433 [50 N. W. 45]; Hodgson v. Keppel, 211 Iowa 795 [232 N. W. 725]; Citizens Bank v. Taylor, 201 Iowa 499 [207 N. W. 570]; Prescott v. Gonser, 34 Iowa 175, 179; Wilson v. Stipp, 194 Iowa 346, 350 [189 N. W. 665]; and recognized Reizenstein v. Marquardt, 75 Iowa 294 [39 N. W. 506, 1 L. R. A. 318, 9 Am. St. Rep. 477]."

It therefore seems to me, there being no distinction between a draft and a check, it was incumbent upon the holder of the draft to make presentation within a reasonable time. No claim is made here that he made presentation within a reasonable time. A period of over 19 years elapsed, and, as stated by this court in the case of Lovrien v. Oestrich, supra, "a creditor may not by his own act or negligence delay or postpone the running of the statute." Clearly, a delay of over 19 years is an unreasonable one, and the plaintiff, by failing to make the necessary demand on the bank, within the provisions of the statute of limitations, all of which was due to his own negligence, allowed his claim to lapse. The lower court, it seems to me, was right in sustaining the demurrer, and I would affirm the decision of that court.

I am authorized to state that ANDERSON and MILLER [ERNEST M.], JJ., join in this dissent.

RICHARDS, J. (dissenting to supplemental opinion)—The supplemental opinion, Justice Mitchell speaking, cites several cases and concludes that the statute of limitations began to run

upon the draft for the reasons that are given in the cases cited. Examination of those of the reasons so given that are in point makes it evident that the decision announced in the supplemental opinion is based on either (1) the doctrine of laches, or (2) an assumption that the rule, to the effect that the statute of limitations runs upon a promissory note from its date, applies by analogy to other demand negotiable instruments. My reasons that neither is a sound basis for the decision are the following:

In espousing laches the majority cites Wrigley v. Farmers, etc., Bank, 76 Nebr. 862, 108 N. W. 132, a typical case. It was a suit upon a draft the presentment of which to the drawee bank for payment had long been delayed. The action was held barred. The salient portion of the opinion was this:

"The reason for the rule is that it was the right of the creditor by his own act *to make* the demand *payable*. He might by such act have *perfected* his *cause* of action, and *it would be both unjust and unreasonable to hold that he could postpone indefinitely the time for enforcing his claim.*" (Italics supplied.)

This application of the doctrine of laches to a situation in which the court recognized, at least impliedly in the language it used, that the statute of limitations could not be invoked because the cause for an action had not been perfected and consequently had not accrued, may have been justified by reason of unjustness or unreasonableness shown by the facts or assumed by the court in that particular case, and it may not have violated the law of that jurisdiction with respect to that doctrine. But the holding falls far short of being an authority on which can rightly be decided the case here before us, and for at least two reasons. One is that in the instant case the defendant bank suffered no loss by virtue of any delay in presentment of the draft for payment. This all-important fact defendant admits. It so admits by demurring. Clearly the Wrigley case rests entirely upon a fact situation of unjustness or unreasonableness in fact shown or assumed by the court. No such facts are shown in the instant case, nor can they be assumed in order to furnish support for the supplemental opinion. The very contrary of unjustness and unreasonableness is a verity in the case at bar. If the real equities were to be considered in light of the facts they would be found to be with plaintiff, whose money the de-

fendant admittedly possesses and in honesty owes to him, and can pay to him without any loss on account of any delay there may have been. The other reason the Wrigley case is unsound as an authority for the majority's decision lies in the fact that in this jurisdiction laches constitute no defense in a law action (as is this) in the absence of proof of injury. Doyle v. Burns, 123 Iowa 488, 99 N. W. 195; Thomas v. Holmes, 142 Iowa 288, 120 N. W. 636. So far as founded on laches the supplemental opinion unfortunately ignores (1) the unquestioned facts in this case, and (2) the law in this jurisdiction with respect to laches as a defense in law actions, and (3) the issues in this case in that defendant saw fit to rely solely on the statute of limitations, without mention of laches in its demurrer.

Adverting now to the assumption designated as (2) in the first paragraph of this dissent. Lovrien v. Oestrich, 214 Iowa 298, 242 N. W. 57, was an action on a promissory note payable 30 days after demand. The statutes of limitations were pleaded. The court applied the ancient rule, holding that the statute began to run at the end of the 30 days. The majority cites this case as an authority for interpreting the same statute of limitations as in like manner affecting the cause of an action upon a draft. But it has frequently been recognized by the courts that it has been an ill-considered tendency to apply by analogy to demand instruments other than notes the ancient rule that the statute of limitations begins to run upon demand promissory notes at the date of the instrument. Difficulty has been experienced in even according the rule any good reason for its origin. This court has offered as an explanation the fact that the duty of a debtor owing a demand promissory note is to seek the payee and pay him, and his duty so to do being complete from the date of the note the cause of an action has immediately accrued. Clearly this character of duty is peculiar to the maker of a demand promissory note. No one would say that the defendant-drawer of the draft in suit was under duty to seek the payee and pay him. The analogy breaks down, and affords no good or even discernible reason that the rule pertaining to promissory notes affects other demand instruments. The rule itself in its application to demand notes is an anomaly, and that it should not be extended to cases which do not fall precisely within it has been stated in other jurisdictions. Downes

1264

v. Phoenix Bank, 6 Hill; N. Y. 297; Brummagim v. Tallant, 29 Cal. 503, 89 Am. Dec. 61. In this jurisdiction the supreme court fell into the error of deeming the demand promissory note rule applicable to demand certificates of deposit. This happened in Mereness v. First National Bank, 112 Iowa 11, 83 N. W. 711, 51 L. R. A. 410, 84 Am. St. Rep. 318. But in Elliott v. Capital City State Bank, 128 Iowa 275, 103 N. W. 777, 1 L. R. A., N. S., 1130, 111 Am. St. Rep. 198, the error was corrected and the Mereness case was expressly overruled because the court had come to a realization that there are distinctions between the obligation upon a demand note and the obligation upon a certificate of deposit, though both are demand negotiable instruments. The distinctions between the obligations of drawers of drafts and makers of promissory notes are no less fundamental. This court's position with respect to whether there is an analogy between promissory notes and other demand instruments, as stated in the Elliott case, being sound, should be determinative in this case. Unable to agree that the supplemental opinion discloses a logical or sound basis for the majority's decision in this case, with respect to the draft, I can not but dissent therefrom, and so do.

HAMILTON, C. J., and SAGER and OLIVER, JJ., join in this dissent.